LINES and another, executors of *Ezra Lines, against* FLAGG and another.

*New-Haven,*
July,
1823.

Lines
*v*
Flagg.

To a promissory note, given by *A.* to *B.*, there was annexed a writing, signed by *B.*, in these words: "I agree with *A.* to give up this note without payment, if my son-in-law *C.* should, at any time, within three years, recommence baking, in *N. H.*, or selling bread, in any form."— Within eight days previous to the expiration of the three years, *C.*, who had become an inhabitant of another state, returned to *N. H.*, leaving his family behind; hired a bake-shop in *N. H.*; purchased two loads of wood, two barrels of flour, some butter and other materials; procured tools; commenced baking, and baked the flour purchased, except about 15 lbs., into crackers and ginger-bread, for the purpose of selling them; and during this period, actually sold them in *N. H.*, and immediately afterwards left the state. The jury having found, under the direction of the judge, that these acts were not done with a view to a permanent establishment, it was held, that they did not constitute the recommencement of baking or selling bread in *N. H.*, within the meaning of the contract.

This was an action on a conditional promissory note. The note and condition were in these words: "For value received, we jointly and severally promise *Ezra Lines*, to pay him, or his order, one thousand dollars, in three years from the 8th day of *May* next, with annual interest till paid. *March* 28th, 1818. [Signed.] *E. & E. Flagg.*

"I agree with *Enoch* and *Elisha Flagg* to give up this note, without payment, if my son-in-law *Jacob Wolf* should, at any time within three years from *May* 8th, 1818, recommence baking in *New-Haven*, or selling bread, in any form. *New-Haven, March* 28th, 1818. *Ezra Lines.*"

The defendants pleaded, That at the execution and delivery of the note to the plaintiff's testator, *Jacob Wolf*, his son-in-law, was a baker, carrying on the business of baking, manufacturing and vending bread, in all its forms, in *New-Haven*; that the defendants were, at the same time, carrying on the same business in *New-Haven*; and that said note was given upon an agreement, and in consideration, that said *Wolf* should discontinue the business of baking and vending bread, in all its forms, in *New-Haven*, for the space of three years from the 8th of *May*, 1818. The plea then averred, that said *Wolf*, within three years from the 8th of *May*, 1818, *viz.* on the 1st of *May*, 1821, in *New-Haven*, did recommence and set up, and did carry on, for a long space of time, *viz.* from the 1st to the 8th of said *May*, the baking and manufacturing of bread, ginger-bread and crackers, and other bread-stuff, contrary to, and in violation of, the condition of said note.

The replication stated, that immediately after the execution of the note, *Wolf* ceased from said business in *New-Haven,* and removed, with his family, to *Cincinnati,* in *Ohio,* where he has, ever since, down to the time of plea pleaded, been engaged in the same business; but within three days of the expiration of the three years mentioned in the condition of the note, he came to *New-Haven,* and threatened to attempt a violation of such condition, and with that view, bought a barrel of flour, manufactured it into bread and crackers, with the implements of the defendant, and, by collusion with him, thus endeavoured to defraud the plaintiffs of a recovery on said note; and immediately thereafter returned to *Cincinnati.* There was then a formal traverse of the defendants' plea; on which issue was joined.

The cause was tried at *New-Haven, August* term, 1822, before *Peters,* J.

The plaintiffs claimed to have proved, that on the 21st of *May,* 1821, *Jacob Wolf* hired a bake-shop in *New-Haven,* without agreeing for any particular rent, or time for which he was to occupy it; that he immediately purchased, and removed to such bake-shop, two loads of wood, two barrels of flour, a quantity of butter, and other materials, for the making and baking of crackers and ginger-bread, and he procured tools, and commenced baking, and carried it on, from the 1st to the 8th of *May,* by baking into crackers and ginger-bread all the flour so purchased, except 15 lb., for the purpose of selling it, in that form, to the citizens of *New-Haven;* and that during this period, he sold said crackers and ginger-bread to sundry citizens of *New-Haven,* and received payment therefor. It was admitted, by the defendants, that immediately after the 8th of *May,* 1821, *Wolf* discontinued the baking and selling of bread, in any form, and left the state, to which he has not since returned. The defendants thereupon requested the judge to instruct the jury, that if they should find the facts above stated to be proved, they ought to return a verdict for the defendants. And they further requested the judge to instruct the jury, that if *Wolf* commenced baking with a view to sell the article baked, it was a violation of the condition of the note, whether he carried on the business of baking for a longer or a shorter period.

The judge, after a statement of the case, instructed the jury as follows: " In deciding this case, it is necessary to take into consideration the intent and meaning of the condition. It is

apparent, that the object of this stipulation or condition was, to remove *Jacob Wolf's* bakery from *New-Haven,* and to restrain him from re-establishing himself there, in the same business ; and I am of opinion, that the acts of baking and selling bread, crackers, &c., as claimed to be proved, do not amount to a recommencing, setting up, and carrying on baking, manufacturing, and selling bread, crackers, &c. within the true intent and meaning of the condition of the note, unless done with a view to a permanent establishment."

*New-Haven,*
July,
1823.

Lines
*v.*
Flagg.

Under this direction, the jury returned a verdict for the plaintiffs ; and the defendants moved for a new trial, on the ground of a mis-direction.

*N. Smith* and *Staples*, in support of the motion, contended, 1. That the charge to the jury had placed the determination of the cause upon a point *not in issue* between the parties.

2. That this point was *not within the condition* of the note. The charge superadded a stipulation to the stipulations of the parties. The contract stated by the judge required different proof to support it, from that made by the parties. The condition annexed to the note is *precedent* to the obligation of payment, and is to be *strictly* fulfilled. The general object contemplated by both parties, was, to protect the defendants from the evils of competition in their business. To effect this object, the parties stipulated, not merely that *Wolf* should not permanently establish his business there again, but that he should not *recommence* it, within the period specified. The *first act* of breaking and selling bread, is a breach of the condition. If *Wolf* had baked bread for his own family only, he would have done no act within the contract ; for this would have been no part of the business of baking and selling bread. But if the act done was within the contract, it could make no difference as to the question of breach, whether that act was repeated, or whether it was done with an intention of repeating it. Suppose a policy of insurance against fire had been effected on this bake-shop, in which there was inserted a condition, that the occupant should not recommence baking or selling bread in such bake-shop, within a limited time ; and the occupant had done the acts, which *Wolf* did, in this case ; and then the bake-shop had burnt down ; could the insured recover on the policy ? *Park* on *Insur. c.* 18. *p.* 422. 428. (6th *Lond.* ed.) Suppose there had been a by-law of the city, that no man should commence the baking and selling of bread, within certain limits ; and then a citizen had done

EDWARD LAW LIBRARY

*New-Haven,*
*July,*
*1823.*

*Lines*
*v.*
*Flagg.*

the same acts within those limits, which *Wolf* did, in this case; would there be no violation of the law? Would it be any defence, that such acts were not done with a view to a permanent establishment?

*Daggett* and *Sherman*, contra, remarked, that the case presented no question as to the correctness of the charge in relation to the issue, distinct from the general question upon the construction of the writing. They then contended,

That in the construction of this instrument, the governing principle was the intention of the parties; that their intention was to be collected, not merely from the literal sense of the expressions,—for *qui hæret in litera, hæret in cortice,*—but from the nature of the transaction, and the object in view; that the subject of the negociation, was the carrying on of a trade or business; that these terms import a regular course of labour or employment, and and are not satisfied by a few occasional acts; that the object of the parties was. to prevent competition in the market, in the exercise of such business; and that whether the acts in question constituted a recommencement of such business, depended upon their being done with a view to a permanent establishment. If *Wolf* meant to continue these acts as a business. there was a breach of the condition; otherwise, there was not.

HOSMER, Ch. J.    The plaintiffs, as the executors of *Ezra Lines*, deceased, commenced their action on a promissory note. executed by the defendants, dated the 28th day of *March*, 1818, in and by which they promised the testator, to pay him, or order, 1000 dollars, in three years from the 8th day of *May* then next.    Having prayed oyer of the note, and of the condition, and covenant subjoined thereto, the defendants recite the same, being in the following words : " I agree with *Enoch* and *Elisha Flagg*, to give up this note, without payment, if my son-in-law, *Jacob Wolf*, should, at any time within three years from *May* 8th, 1818, recommence baking in *New-Haven*, or selling bread, in any form." They then plead in bar of the action, that at the execution and delivery of said note. *Jacob Wolf* aforesaid was a baker, carrying on the business of baking, manufacturing and selling bread, in all its forms. in said *New-Haven*, as were likewise the defendants ; and the preceding note was given upon an agreement, and in consideration, that the said *Wolf* should discontinue the busi-

ness of baking and selling bread in said *New-Haven*, for three years next subsequent to the 8th *May*, 1818. The defendants then aver, that the said *Wolf*, within three years from the said 8th of *May*, that is, on or about the 1st of said *May*, in said *New-Haven*, did recommence and set up, and did carry on, for a long space of time, *viz.* from the 1st to the 8th of said *May*, the baking and manufacturing of bread, crackers, ginger-bread, and other bread-stuff, contrary to, and in violation of, the condition of said note. To this plea, the plaintiffs replied, commencing their replication with a long inducement, the statement of which is unnecessary, and then concluding, with a literal traverse of all the facts in the defendants' plea, which relate to the recommencement by *Wolf* of the baking, manufacturing and selling of bread in *New-Haven*, contrary to the condition and covenant subjoined to the aforesaid note. On this special issue, the parties went to trial ; and it was claimed to be proved, that on the 1st day of *May*, 1821, *Wolf* hired a bake-shop in *New-Haven*, without any agreement for the rent, or the time during which he was to occupy it ; that immediately thereupon, he purchased two loads of wood, two barrels of flour, a quantity of butter, and other materials, for the making and baking of crackers, and ginger-bread, and removed the articles purchased to the said bake-shop ; that he procured tools, and commenced baking, and carried it on from the 1st to the 8th of *May* aforesaid, by baking into crackers and ginger-bread the said two barrels of flour, except about fifteen pounds ; that the said flour was baked as aforesaid, for the purpose of being sold to the citizens of *New-Haven ;* and that on several days between the 1st and 8th of *May*, the said *Wolf* retailed the crackers and ginger-bread aforesaid to the citizens of *New-Haven*, and received payment therefor. After the said 8th day of *May*, *Wolf* discontinued the baking and selling of bread, and left the state ; to which he has not since returned.

In his charge to the jury, after having recited the above facts, the Judge informed them, that it was necessary to take into consideration the *intent and meaning* of the condition to the note. He then remarked, that the object of the stipulation was, to remove *Jacob Wolf*'s bakery from *New-Haven*, and to restrain him from re-establishing himself there, in the same business ; and that the acts of baking and selling bread, as claimed to be proved, did not amount to a re-commencing, setting up and carrying on, the baking, manufacturing and

*New-Haven,*
*July,*
*1823.*

Lines
*v.*
Flagg.

selling of bread, crackers, &c. within the true intent and meaning of the condition to the note, *unless done with a view to a permanent establishment.*

I have been thus minute in the statement of the case, as there exists a difference of opinion, relative to the correctness of the Judge's charge, and it has become necessary that the facts be understood, with all imaginable precision. A little diversity in the statement of the facts, may have a material effect in the construction of the contract between the parties.

Undoubtedly, it was the opinion of the Judge, as I think it must be that of every other person, that *Wolf* commenced the baking in *New-Haven,* and the selling of bread, contrary to the condition of the aforesaid note, unless its being done, with a view to a permanent establishment of the business, was a part of the agreement.

The case presents the general question, What is the correct construction of the before-mentioned contract? The condition of the note, as it has been denominated, is, in fact, a *covenant* on the part of the plaintiffs' testator, that he will surrender it, without payment, on the happening of a certain event. If, however, it be considered as a condition or qualification of the agreement, it was entered into by the plaintiffs' testator, for the defendants' benefit; and in either view of the subject, it must be taken most strongly against him, lest, by the obscure wording of his own contract, he should find means to evade or elude it. This, I am well aware, is a rule of construction only to be resorted to, when there is an ambiguity remaining, relative to the purpose of the parties, after every practicable effort has been made, to ascertain their real intention. In the attempt to investigate the true meaning of the stipulation, I shall examine the words of the condition,—the general object in view,—and the special means, by which the parties intended to guard and effectuate their engagement.

1. As to the *words* of the condition. In the argument of the case, the contract was spoken of, as if it had been an agreement not to re-commence the baking business, or the business of selling bread; or not to establish the business of baking, with a view to carry it on; and in other forms of phraseology, supposed to be synonymous with the real engagement. When the enquiry is, what was the contract of the parties, and what the interpretation of it, from the words

used, (the principal signs of their intention,) it is very inad-

missible to adopt any other language than that in which the
agreement was conceived.  By any other process, the mean-
ing of the terms is never acquired, but the impressions of the
speaker are improperly substituted.  If we will adhere pre-
cisely to the language, by which the intention of the parties
is recorded, I think the meaning will be found to be so clear
and unequivocal, as to fall within the rule, that it is not per-
mitted to interpret that which has no need of interpretation.
*Vattel, lib.* 2. *cap.* 17. *sect.* 263.  The plaintiffs' testator agrees
to give up the note without payment, if his son-in-law, *Jacob
Wolf,* shall. within three years from *May* 8th, 1818, recom-
mence the baking in *New-Haven,* or the selling of bread, in
any form.  What is meant by the word *recommence?* for on
this single term, the controverted construction of the condi-
tion, does most essentially depend.  In the best lexicograph-
ers, as well as in common conversation, *to recommence,* is
considered as synonymous with the expression, *to begin
anew;* and preserving the order of the ideas signified, the
word is of the same signification, with the terms *again begin;*
and as the term recommence, by a necessary *subintelligitur,*
must be considered as preceding the expression *selling bread,*
the engagement by the plaintiffs' testator was precisely
equivalent with the following language, *viz. Wolf* shall not
*again begin* the baking, or *again begin* the selling of bread.
It is impossible to select an expression more definitely limit-
ed, and more perfectly unequivocal, than this; and if, by the
subtility of criticism, this plain mode of speech can be made
susceptible of a doubt, I shall despair of finding terms, which
will be proof against a similar disquisition.  Had *Wolf* nev-
er baked or sold bread, in *New-Haven,* and the preceding en-
gagement had been entered into, the expression would have
been, he shall not *commence* the baking in *New-Haven,* or
the selling of bread.  Who would have entertained a doubt
from this phraseology, of its having been stipulated, that he
shall not begin to bake or to sell; and that the commence-
ment, the very first act of the beginning, was a breach of the
contract?  The agreement under discussion, must receive
the same construction; for a contract, that a person shall *not
begin* to do certain business, or if he had before been of the
same occupation, that he shall not *again begin,* is of similar
import, and infracted by the same act.  I think it irrefraga-
bly clear, so far as the intention of the parties is indicated by

their language, that the interdict on *Wolf* did not regard the establishment and carrying on the business of a baker, merely, but the incipient step to this proceeding; and the wisdom of the contract, aimed, as it was, at an act, which would give a clear field, and no competitor, to the defendants, I trust, will, by and by, be made to appear, in a manner the most satisfactory.

2. The *general object*, which the parties had in view, is in perfect harmony with the literal construction of the contract. *Wolf* and the defendants were bakers; and the latter were willing to give 1000 dollars, if the former would wholly intermit his occupation at *New-Haven*, for three years, and give them the undisturbed possession of the market. Any thing short of this would not effectuate the intended purpose. Whether the act of *Wolf*, in the baking and selling of bread, was with a view to a permanent establishment in the business, or a temporary continuance only, could not have entered into the contemplation of the parties. *Wolf*, to use a common, but expressive phrase, was *bought out*; 1000 dollars was promised for the entire relinquishment of his occupation at *New-Haven*; and by the defendants, the distinction between a durable, or occasional exercise of his occupation, as a baker, could never have been imagined; as either of them, although differing in the degree of injury, would diminish their profits, and impair the benefits of the contract. The charge of the Judge, I cannot but consider as indefensible, and the principle assumed, as resulting in consequences the most unreasonable. *Wolf*, according to the construction given, might exercise the trade of a baker, without controul, if it were not done, with a view to a permanent establishment, notwithstanding the contract declares, that he shall not again begin, for the space of three years, to bake or sell bread, in *New-Haven*. It is not easy to define the bounds of this limitation; but perhaps it may be fairly said, to mean an establishment, for an indefinite period of time. If this is intended, it results, that having agreed, *in terminis*, for three successive years, not to begin again, in *New-Haven*, the baking or selling of bread, *Wolf* might enter on the same occupation as before, and supply the market for one, two or more years, to the injury or exclusion of the defendants, if there were a point of limitation, beyond which the business was not intended to be pursued. This consequence is too irrational to be vindicated. If, however, by a permanent establishment, a

definite period is embraced, (for on this subject I confess my incapacity to assign the limits,) what is the *terminus a quo et ad quem*, of this privileged time? Is it a month, a year, or a longer circuit of duration? But every month, every year, every period of time within the term, during which, the labours of *Wolf*, at *New-Haven*, in the occupation of a baker, were to be intermitted, if he pursue the business of baking and selling bread, diminishes the expected profits of the defendants, and deprives them of the fruit of their purchase. I readily admit, that the injury, perpetrated by the manufacture and sale of a single barrel of flour, is so small, that an attempt to avoid the note in question, for this reason, may subject the defendants to the imputation of doing as they would not be done by. But such considerations cannot affect the legal construction of the contract, so long as it is the duty of the Court, "*jus discere, sed non dare.*"

3. I now recur to the third topic of argument suggested, that is, the *special means*, by which the parties intended to guard and effectuate their engagement. It was by a contract, inhibiting *Wolf* from *commencing* the business of a baker, within the specified period. As the general object was, to secure the undisturbed possession of the market, the necessary mode of doing this, was that to which they resorted. They drew certain lines, which were not to be passed over, and so defined the right of the defendants, that it could not be transgressed otherwise than intentionally. Hence, the contract prohibited the least interference on the part of *Wolf*, by providing, that he should not *begin* to act in his occupation, at *New-Haven*, within three years. The literal construction of the contract, is indispensible to effectuate the object of the parties, and secure the privilege of the defendants from invasion. *Wolf* could not *begin* to bake and sell bread, without transgressing their rights, and impairing the object of their purchase. The prohibition on him, according to the plain letter of the engagement, was both wise and necessary. There is nothing unusual in securing a general object, by a definite limitation; and the law relative to the contracts of infants, furnishes an obvious illustration. I am aware, that the cases are not precisely parallel, as in the law respecting infancy, the letter of the law is not deviated from, although it extends beyond the general object in view. But in the case under discussion, the literal construction is not only necessary to secure the purpose of the parties, but

*New-Haven,*
*July,*
*1823.*

*Lines*
*v.*
*Flagg.*

the least departure from it, impairs the object of the contract. I will merely remark, in addition, that unless the letter of the contract is adhered to, in this case, as indicative of the intention of the contractors, there is no principle by which the object of the engagement can be secured. If the agreement had contained the expression, "with a view to a permanent establishment," adopted in the charge to the jury, the end designed, would have been entirely frustrated. *Wolf* might have recommenced his occupation, impaired the profits of the defendants, and virtually have nullified the engagement.

I am clearly of opinion, that the charge was incorrect; and I would, therefore, advise a new trial.

CHAPMAN, J. was of the same opinion.

BRISTOL, J. The agreement annexed to the note, and signed by the testator, is in these words: "I agree with *Enoch* and *Elisha Flagg*, to give up this note, without payment, if my son-in-law, *Jacob Wolf*, should at any time within three years from *May* 8th, 1818, recommence baking in *New-Haven*, or selling bread, in any form. *New-Haven, March* 28th, 1818.

*Ezra Lines.*"

The only question in the case, is, whether *Jacob Wolf*, upon the facts disclosed, has "*recommenced baking or selling bread, in New-Haven,*" within the meaning of the contract?

If the words are taken in their *literal* meaning, it may be granted that *Wolf* offended against the letter of the contract. So he would, had he baked bread in *New-Haven*, merely for the use of his own family; for he was neither " to bake" nor " sell" bread in *New-Haven*. But this literal construction has been abandoned, by the counsel for the defendants; and in making this concession, they only agree, what all others must admit, that it is not the letter, but the spirit and meaning of the contract, which is to govern the case.

Instances of departing from the letter of a contract or statute, the more effectually to execute the intention, will occur to every one, who reflects on the subject. A covenant against *all claims*, is so restrained, as to comprehend those claims only, which are *lawful*. The law against drawing blood in the street, was broken in its letter, by the physician, who drew blood to save the life of a man taken in a fit; but the spirit of the law was not violated, by this act of humanity. Indeed, the physician would have been considered grossly

blameable, had he omitted this act of duty, from any scruples of violating the law in question. We are commanded not to kill ; but the generality of the prohibition is restrained by the reason of the rule. So, a contract may be *fulfilled*, according to the letter, but not according to the meaning. Thus, a garrison capitulated, upon condition that no blood should be shed ; and this condition was *literally* fulfilled, by burying the prisoners alive. So, in the present case, had *Wolf* established a bake-house, just within the limits of *East-Haven*, and there baked and sold bread, to the citizens of *New-Haven*, during the whole three years, the contract would have been, literally, performed ; yet who can doubt that this would be considered as violating the spirit of the contract ?

We are prepared to enquire, whether *Jacob Wolf* " recommenced baking or selling bread," within the *spirit* of the contract ?

The facts are shortly these. *Jacob Wolf*, at the time he did the acts complained of, was an inhabitant of *Cincinnati, Ohio*. He was at *New-Haven*, on a temporary visit ; his family was in *Ohio ;* and he was still carrying on the business of a baker there. He had no intention of pursuing the business of baking and selling bread in *New-Haven*, but intended to return, in a few days, to his family and business in *Ohio*. He was, at *New-Haven*, a mere bird of passage, without any intention of prosecuting the baking business, or of interfering with the defendants, by a rival establishment. In eight days, he baked and sold something more than one barrel, and not two barrels, of flour ; and when the three years were out, and his conduct could no further affect the rights of the parties, then he stopped baking, and returned to *Ohio*.

As the motive of *Wolf* is immaterial, and no evidence was introduced to shew any connivance between him and the defendants ; the only question is, whether these facts constitute a " recommencement of baking or selling bread in *New-Haven*," within the meaning of the contract.

By " *recommencing, baking or selling bread in New-Haven*," I understand the parties intended to provide against the recommencement of the baking *business ;* or the *trade* of baking ; or in other words, the setting up or re-establishment of a *bakery*, by *Wolf*. That this is the meaning of the contract, thus far, is yielded by the counsel for the defendants, as well as by my brethren, who dissent from the opinion of the

*New-Haven,*
July,
1823.

*Lines*
*v.*
Flagg.

court : and without this concession, they would, at the threshold, stumble on the difficulty, that *any act* of baking, though for the use of *Wolf's* own family, would be a violation of the contract ; and when the literal meaning of the expression is abandoned, no meaning can so naturally be attached to the language, as that which I have mentioned.

What, then, is implied, by recommencing or re-establishing the *business* of baking or selling bread ? Let the well known use of language answer this question.

By recommencing the *business of baking*, in *New-Haven*, I understand, not only baking flour, and selling the bread baked, but this must be done *with a view* of carrying on the *business*, either for an *indefinite*, or some *considerable space of time*. If a lawyer, passing from *Boston* to *Washington*, to attend the Supreme Court of the *United States*, should stop at *New-Haven*, for a day, and while there, at the request of a fellow passenger, should appear before a Justice of the Peace to defend his friend from a charge of violating the Sabbath, or some other criminal accusation, no one would think of saying, that he had commenced practice there, or established himself in the practice of law, at *New-Haven*. The act is single ; and practising law in *New-Haven*, would be foreign to his intention. No one would say, in ordinary parlance, that if a merchant of *Hartford*, on his way to *New-York*, should sell a cargo of lumber in *New-Haven*, that by doing this, he had set up or commenced the business of merchandize in the latter place. The very term of "*setting up business*," denotes something more than a single act of professional or mechanical employment, or a single instance of buying or selling ; and something more than a temporary stay of a few days, without any intention of pursuing the employment. Had *Wolf* come to *New-Haven, with a view of carrying on the business there*, either for an indefinite or any considerable time, and had actually baked and sold bread, though but a single loaf, previous to the expiration of the three years, I have no doubt it would have been a breach of the contract ; for the business may properly be said to be *commenced*, though very little was done, provided that little was with a view of continuing the business.

It is said, that this contract *secures* the *New-Haven* market for bread to the defendants, against *any interference whatever of Jacob Wolf ;* and as the note cannot be apportioned, ac-

cording to the injury received, though that injury is small, that the plaintiffs can recover nothing.

In reply to this argument, let it be observed, that the *extent* of the *security*, which the defendants have against *Wolf's* interference in the bread market, depends upon the meaning of the contract, which we have endeavoured to ascertain. We have endeavoured to shew, that this security consists, in *Wolf's* not being allowed to recommence or re-establish the "*baking business;*" and that the acts of *Wolf* do not constitute a recommencement of the business within the meaning of the contract. No doubt, the construction, which I have given the contract, affords to the defendants all the security against *Jacob Wolf's* interference, which any rational man would think necessary to provide. Whether the construction, which has been adopted, be correct or not, depends on the terms of the contract, and the reasons employed in favour of the construction given to it. To *assume*, therefore, that the defendants are secured against *the least interference of Jacob Wolf*, by selling any quantity of bread, under any circumstances, in *New-Haven*, during the three years, is taking for granted that which is not conceded ; and which is not true, unless my construction of the contract is erroneous.

I have endeavoured to shew, that the recommencement of baking, or selling bread, must mean the same thing as the business or *employment* of baking or selling bread ; that no person can properly be said to commence such a business or trade in a particular place, unless it is done with an intention of prosecuting it, either for an indefinite or some considerable space of time ; and if such is the intent, that it matters not whether he does much or little business ; but that a few acts of baking and selling bread, without any view of prosecuting the employment, but with a direct view of discontinuing it, after a few days, does not constitute a recommencement of the baking business within the true spirit and meaning of the contract ; and being of this opinion, I would not advise a new trial.

PETERS and BRAINARD, Js. were of the same opinion.

New trial not to be granted.