## HALL *against* RAND.

Where *A.* gave to *B.* a writing in these words : "Whereas *B.* has agreed to indorse *C.*'s notes at the *Middletown Bank*, to the amount of 4000 dollars, I hereby agree to be responsible to *B.* for one half the amount of any loss he may sustain, by said indorsement ; and I agree to pay the one half of any payments, which *B.* may be obliged to make, in the same manner and at the same time I should be obliged to pay it, provided I was joint indorser with him on said notes ;" it was held, 1. that such writing was not, on its face, a continuing guaranty, but was limited to the indorsement of notes, once only, to the amount of 4000 dollars ; 2. that parol evidence of the subject matter of the agreement and of the circumstances under which it was made, was inadmissible to affect the construction ; 3. that by virtue of the agreement, *B.* was authorized to indorse the notes of *C.* by attorney, the act being fixed and not requiring the exercise of judgment or discretion, and therefore capable of delegation ; 4. that *B.* was not bound to give notice to *A.* of the several indorsements of *C.*'s notes, as they were made ; and 5. that *A.* was not entitled, as an indorser, to strict notice of the dishonour of such notes.

This was an action of *assumpsit* upon a written guaranty in the following words :

*Middlesex,*
July, 1831.

Hall
*v.*
Rand.

" *Middletown, May 23rd, 1823.*
Whereas *Joel Hall* has agreed to indorse *Samuel Cooper's* notes, at the *Middletown Bank*, to the amount of 4000 dollars, I hereby agree to be responsible to said *Hall* for one half the amount of any loss he may sustain, by said indorsement ; and I agree to pay the one half of any payments which said *Hall* may be obliged to pay, in the same manner and at the same time, which I should be obliged to pay it, provided I was joint indorser with him on said notes." [Signed by the defendant.]

There were five counts in the declaration. The first count stated, That in consideration that the plaintiff, at the special instance and request of the defendant, would indorse, to the amount of 4000 dollars, the promissory notes of *Samuel Cooper*, which might thereafter be made payable, and be discounted, at the *Middletown Bank*, the defendant undertook and faithfully promised to pay him one half of the amount of any loss which he might sustain in consequence of his indorsing said notes.

The second count stated, That in consideration that the plaintiff, at the special instance and request of the defendant, should, from time to time, indorse and continue to indorse, to the amount of 4000 dollars, the promissory notes, &c.

The third count stated, That in consideration that the plaintiff, at the special instance and request of the defendant, had agreed with the defendant, that the plaintiff would thereafter indorse, from time to time, for the accommodation and benefit of *Samuel Cooper*, in his the said *Cooper's* business, as he should have occasion, the promissory notes of said *Cooper*, to the amount of 4000 dollars, &c. In this count, the writing was recited.

The fourth count stated, That in consideration that the plaintiff, at the special instance and request of the defendant, had before agreed with the defendant, that he would indorse, for the accommodation of *Samuel Cooper*, to the amount of 4000 dollars, the promissory notes of said *Cooper*, which said *Cooper* should, in his business, thereafter from time to time have occasion for, &c. In this count, also, the agreement was recited.

The fifth count was for money paid, laid out and expended for the defendant's use.

The cause was tried at *Middletown, February* term, **1831,** before *Daggett,* **J.**

*Middlesex,*
July, 1831.

Hall
v.
Rand.

It was admitted, on the trial, that the plaintiff had indorsed the notes of *Cooper,* payable at, and discounted by, the *Middletown Bank,* from time to time, as his business required, to an amount not exceeding, at any one time, 4000 dollars, from the 6th of *July,* 1823, to the time of the execution of the notes paid by the plaintiff, in 1827 ; that such notes had, from time to time, been paid by *Cooper,* at the bank ; that the notes first indorsed amounted, before the 20th of *July,* 1824, to 4000 dollars ; and that the notes paid by the plaintiff were not renewal notes of those first indorsed by him.

The indorsements of *Cooper's* notes, from the 6th of *July,* 1823, were all made in the name of the plaintiff, by *Cooper,* acting as his attorney, under a power of attorney, duly executed by the plaintiff.

The plaintiff had notice of the non-payment, by *Cooper,* of the notes since paid by the plaintiff, on the day on which these notes became payable.

On the 15th of *October,* 1827, before any of such notes became payable, *Cooper,* by request of his several indorsers and of the plaintiff and defendant, assigned his property to a trustee, for the payment and security of his indorsers ; who thereupon executed to him a writing, agreeing to pay the notes of *Cooper* by them respectively indorsed, and to give him a discharge in full from any liability thereon. The defendant, who was responsible for *Cooper* on a separate note of 200 dollars, signed this writing, and also assented to the signature of the plaintiff thereto, so far as he was interested in the indorsments made by the plaintiff.

In connexion with the written guaranty, and for the purpose of enabling the court to give a construction to it, by applying the terms used therein to the subject matter and circumstances, in reference to which the writing was executed, (in case they should be found by the jury as claimed by the plaintiff;) the plaintiff offered testimony to prove, that in the month of *May,* 1823, previous to the execution of the writing, *Cooper,* being free from debts, but destitute of capital, was desirous of engaging in navigation, in the *West India* trade, as a permanent business, and to an extent requiring a capital of 10,000 dollars ; and wishing to be certain of a continual accommodation to an amount not less than that sum, made an arrangement at the *Middletown Bank,* for such accommodation, on his procuring a satisfactory indorser on his notes, to be discounted as the exi-

*Middlesex,*
July, 1831.

Hall
*v.*
Rand.

gencies of his contemplated business might require ; that pursuant to such arrangement, he applied to several of his friends to become his standing indorsers on such notes, each to the amount of 2000 dollars, and among others, to the plaintiff and the defendant, who severally consented to become responsible as such indorsers to that amount ; but that the defendant apprehensive that his own credit might be impaired thereby, preferred, from motives of personal convenience to himself, that his name should not appear at the bank, on the paper of *Cooper*, as his accommodation indorser ; that in order to obviate this inconvenience to the defendant, and, at the same time, to enable *Cooper* to avail himself of the defendant's credit, as permanent indorser to the amount of 2000 dollars, an arrangement was made, through *Cooper*, between the plaintiff and defendant, that the plaintiff should be the indorser of *Cooper's* notes at the bank, from time to time, as he should have occasion in his business, to the amount of 4000 dollars ; that thereupon the defendant, with full knowledge of these facts, executed and delivered to the plaintiff the writing on which this suit was founded ; and that *Cooper*, having made these arrangements, immediately thereafter commenced his contemplated business, purchased vessels, and, from time to time, made voyages to and from the *West-Indies* until the time of his assignment, relying upon the indorsements of his friends so made for his capital in the management of his business.

The defendant objected to the admission of this testimony, on the ground that no parol evidence of extraneous facts could be admitted, for the purpose of enabling the court to explain or to give a construction to the terms of the writing. The court admitted the testimony thus offered.

The defendant then claimed, that the court should charge the jury, that the writing only obligated the defendant to become responsible to the plaintiff for any loss he might sustain, by reason of indorsements once made on the paper of *Cooper* to the amount of 4000 dollars, and not for any loss which the plaintiff might sustain, by reason of any subsequent indorsements from time to time. On the other hand, the plaintiff claimed, first, that the writing, on the face of it, imported a responsibility for continued indorsements, from time to time, as alleged in the declaration ; and secondly, that whatever might be the construction of the terms used in the writing, if unexplained, by evidence of the subject matter and circumstances

*Middlesex.*
July, 1831.

Hall
*v.*
Rand.

existing at the time, and to which those terms had reference; yet in connexion with such circumstances and subject matter,(if they should be found by the jury as claimed by the plaintiff,) the writing imported a responsibility for indorsements from time to time, as alleged by the plaintiff, in his declaration.

There was no evidence, that the defendant was notified, by the plaintiff, at the time when the notes paid by the plaintiff became due, of the non-payment thereof by *Cooper;* or that the defendant had, at that time, any knowledge of such non-payment, other than such as might be inferred from the assent of the defendant to the discharge and agreement by *Cooper's* indorsers at the time of the assignment of his property; but the defendant subsequently, and before the institution of the plaintiff's action, was notified thereof, and requested to pay the amount now demanded.

The defendant thereupon claimed, that the court should charge the jury, that the plaintiff could not recover, by reason of his failure to give notice, at the time the notes were dishonoured.

The defendant also claimed, that as the plaintiff had indorsed said notes through *Cooper*, his attorney, and as the defendant had no notice of that fact until after the execution of the power of attorney, the plaintiff was not entitled to recover.

The defendant further claimed, that the written guaranty, even as explained by the parol evidence, did not support any of the counts in the declaration.

The court charged the jury, that if they believed the testimony of the witnesses of the plaintiff tending to show the object of the parties in entering into the writing, and the circumstances in reference to which the writing was executed, they ought to find for the plaintiff; otherwise, for the defendant.

The jury returned a verdict for the plaintiff; and the defendant moved for a new trial.

*N. Smith* and *Barnes*, in support of the motion, contended, 1. That the writing given by the defendant, is not, on its face, a continuing guaranty. Every clause in the agreement, considered separately, and the whole taken together, are satisfied, by construing it a guaranty of the notes first indorsed, to the amount specified. No words of continuance are expressed; and the words used imply no continuance. This result, deduced from an analysis of the agreement, is confirmed by the

authorities. *Cremer* v. *Higginson*, 1 *Mason* 325. *Peters* v. *Middlesex, Goodrich*, 3 *Conn. Rep.* 150. 2 *Stark. Ev.* 649. *Bacon* v. July, 1831. *Chesney*, 1 *Stark. Ca.* 192. *Kirby* v. *The Duke of Marlborough*, 2 *Mau. & Selw.* 18. *Rogers* v. *Warner*, 8 *Johns. Rep.* 119. The court will never construe a writing to be a continuing guaranty, unless the parties have made it such, by plain and clear expressions; the inclination, in doubtful cases, being against such a construction. The plaintiff's claim is *strictissimi juris.* It is an attempt to charge the defendant as a surety ; and it is a well established principle, that as against a surety a contract cannot be carried beyond the strict letter of it.

Hall
*v.*
Rand.

2. That the parol testimony offered by the plaintiff to aid in the construction of the writing, was inadmissible. First, there is no latent ambiguity in the writing, requiring or justifying the admission of parol testimony. 2 *Stark. Ev.* 1000. 1007. 1036. *Sage* v. *Wilcox*, 6 *Conn. Rep.* 93. The contract is perfect, and evidence of a farther consideration is inadmissible. 3 *Stark. Ev.* 1004. Secondly, the admission of parol evidence, as claimed by the plaintiff, varies the contract, by adding new terms. 3 *Stark. Ev.* 1048. Thirdly, the writing does not refer or allude to the facts offered to be proved, nor to the subject of them.

3. That the plaintiff could not authorize *Cooper* to indorse the notes in question. This was a *personal trust* reposed in the plaintiff, which he could not delegate. *Com. Dig. tit.* Attorney. C. 3. So far as it might affect himself, the authority was binding ; but he could bind the defendant by his own indorsements alone.

4. That it was the duty of the plaintiff, when he had indorsed *Cooper's* notes to the amount stipulated, to give immediate notice thereof to the defendant ; and without such notice, the defendant was discharged. 2 *Stark. Ev.* 649. *Cremer* v. *Higginson*, 1 *Mason* 340. *Rapelye* & al. v. *Bailey*, 3 *Conn. Rep.* 443. *Peel* & al. v. *Tatlock*, 1 *Bos. & Pull.* 419.

5. That the defendant was entitled to strict notice of the dishonour of the notes ; he being virtually *a joint indorser* with the plaintiff. By the terms of the agreement, the defendant was to be responsible " *in the same manner*," as if he " was *joint indorser* with the plaintiff on the notes." *Stark. Ev.* 649. *Cremer* v. *Higginson*, 1 *Mason* 340. *Rapelye* & al. v. *Bailey*, 3 *Conn. Rep.* 443. *Sage* v. *Wilcox*, 6 *Conn. Rep.* 93.

*Shepard* v. *Loomis*, 1 *Conn. Rep.* 370. *French's Executrix* v. *The Bank of Columbia*, 4 *Cranch* 164. *Smith* & al. v. *Becket*, 13 *East* 187. *Brown* & al. v. *Maffey*, 15 *East* 222. The discharge signed by the defendant with others, was no waiver of notice, especially as the defendant, when he signed it, was *ignorant of the facts*.

6. That the proof does not support either count in the declaration. The plaintiff cannot recover on the general count, because there is a written contract. As to the other counts, there is a fatal variance between each of them and the writing, by itself, or in connexion with the parol evidence.

*Sherman* and *Storrs*, contra, contended, 1. That the writing on which the action is founded, is, on its face, to be construed as a continuing guaranty. Where a guaranty is limited to a particular occasion or transaction, it is not a continuing guaranty ; but if there is no such limitation, it is a continuing guaranty. This distinction is upheld by all the cases. *Rapelye* & al. v *Bailey*, 6 *Conn. Rep.* 149. *Mason* v. *Pritchard*, 12 *East* 227. *S. C.* at *Nisi Prius*, 2 *Campb.* 436. *Merle* & al. v. *Wells*, 2 *Campb.* 413. Here the terms of the writing are general, with no other particular or restrictive expression, except the limitation as to the amount ; and this express limitation implies, of itself, the exclusion of any other. To agree to indorse another's notes at a particular bank, is to agree to become his general indorser at that bank. If the writing is of doubtful construction, it ought to be construed most strongly against the party making it. And the defendant is not to be protected from the operation of this rule, on the ground of his being a surety ; for as between the plaintiff and him, the relation of principal and surety does not subsist. They are joint sureties for *Cooper* ; and, so far as that consideration is concerned, the plaintiff is as much entitled to a liberal construction as the defendant.

2. That the parol evidence, offered by the plaintiff, was admissible. In the first place, the subject matter and circumstances of the transaction, where the words are doubtful, or susceptible of two interpretations, may be given in evidence in cases of this kind. *Rob. Frauds*, 11. 14. 87. *Hyde* v. *Hill*, 3 *Term Rep.* 377. 379. *Lines* & al. v. *Flagg*, 4 *Conn. Rep.* 581. 3 *Dall*. 421. *n*. *Peish* v. *Dickson*, 1 *Mason* 9. *Sumner* v. *Williams*, 8 *Mass. Rep.* 214. *Cole* v. *Wendel*, 8 *Johns. Rep.*

118. *Ely* & al. v. *Adams,* 19 *Johns. Rep.* 313. *Phill. Ev.* 433, *Middlesex,*
4. *Peake's Ev.* 116. 3 *Stark. Ev.* 1047, 8, 9. 1033. 1013. 1
*Swift's Dig.* 226. Secondly, the writing distinctly refers
to an agreement between these parties ; and, on this ground,
parol evidence is admissible to shew what that agreement was.
The agreement referred to, is thus virtually incorporated in
the writing. 1 *Stark. Ev.* 371. *Falconer* v. *Hanson,* 1 *Campb.*
171. *Johnson* v. *Gilson,* 4 *Esp. Rep.* 21. *Wheeler* v. *Atkins,*
5 *Esp. Rep.* 246. 1 *Swift's Dig.* 235.

3. That the plaintiff was not bound to give notice to the
defendant of the indorsement of *Cooper's* notes. He was
bound by the agreement to indorse them.

4. That no other notice to the defendant of the non-pay-
ment of the notes, than the ordinary notice before suit
brought, was necessary, in this case. The defendant was not
an indorser ; and was not entitled to be treated as such with
respect to notice.

5. That under the agreement the plaintiff was authorized to
indorse *Cooper's* notes, within the amount prescribed, either
in person or by procuration.

6. That if the defendant's construction of the agreement
is correct, it supported the declaration, especially the fourth
count.

Hosmer, Ch. J. The minor points in this case may by des-
patched in a few words.

The plaintiff, unquestionably, was authorized, by the defen-
dant, to indorse the notes of *Cooper,* by an attorney. On any
construction, the agreement to indorse was certain ; and the
act required the exercise of neither judgment nor discretion.
It was a fixed fact, and capable of delegation. *Pal. Ag. passim.*

To notify the defendant of the indorsements, when made,
was no part of the plaintiff's duty, enjoined by law or required
by the agreement ; nor was the defendant, in any sense, an
indorser of the notes in question, and entitled to strict notice
of their dishonour. The stipulation to pay in the same manner
and time, in which the defendant would be obliged to pay
" provided he was joint indorser of the notes," implies, that he
was not an indorser, a fact perfectly obvious ; and this super-
fluous engagement was only intended to define the extent of
the obligation, and not the manner of the plaintiff's proceeding.

Whether either count in the plaintiff's declaration was

*July, 1831.*

Hall
*v.*
Rand.

*Middlesex,* adapted to the proof in the case, the result to which I have
July, 1831. come, renders it unnecessary to determine.

Hall
*v.*
Rand.

The case presents two important questions; the first, whether the written agreement of the defendant is, *on its face,* a continuing guaranty; and the second, whether in order to give it a construction, the parol testimony received, was admissible.

In reply to the first question, I think it clear, that the written agreement, *on its face,* was not a continuing guaranty, but was limited to the indorsement of notes, once only, to the amount of 4000 dollars.

The real inquiry is, what was the intention of the defendant; and to ascertain this, his words must be taken in their plain, popular and obvious sense. That is the true meaning of the contract, which readily presents itself to a plain man of common understanding, on reading it attentively and impartially, and not that which is elaborated with effort. The terms being understood, the image of them will, naturally and with little exertion, be stamped upon the mind. It is an unfounded position, that in the construction of mercantile agreements, a peculiar liberality should be exercised. This unquestionable error was effectually refuted, by Lord *Ellenborough,* in *Robertson* v. *French,* 4 *East* 135.; and in this there exists no difficulty, unless the *English* language, when used in the commercial world, has a meaning different from what it has, when employed by others; or unless the intention of merchants is ascertainable through a different medium from the intention of other men. It is when terms are used, which, by a particular class of persons, are known and understood in a special and peculiar sense, that evidence is admissible to interpret their meaning, just as if they were a foreign language. But beyond this the principle does not extend. Merchants may adopt technical terms, and may affix what weight and value they please to words and tokens of their own peculiar coinage; but if, as in this case, they use plain and ordinary words and expressions, to which usage has given an unequivocal meaning, their intendment must, in all cases, be uniform; nor can their meaning be altered, even by a mercantile understanding and usage to the contrary. 3 *Stark. Ev.* 1033 to 1037.

The agreement in question is not to be construed most favourably for the defendant, nor most strongly against him.

Both plaintiff and defendant are co-sureties; and hence the former rule is applicable; and the latter is of dernier resort, and to be recurred to, only when all other rules of construction fail.

I will mention but one more rule of construction. Words are always to be understood in reference to the subject matter of an agreement; as the same expression, when applied to different subjects, sometimes admits of different intendments.

I now proceed to a construction of the contract. It is expressed with unusual precision, and comprises the consideration, the subject matter and the stipulation of the agreement.

The consideration appears from the whole tenor of the writing. It authorizes the plaintiff to indorse the notes of *Cooper,* on the joint responsibility of the parties; and requires no proof *aliunde* to show, that the consideration was legal and sufficient. The performance of an act, by the authority or upon the request of a person, which may be attended with loss or prejudice, is an unquestionable consideration. 1 *Pow. on Contr.* 344.

The subject matter of the agreement was not merely alluded to, but was embodied on the face of the writing : "Whereas Mr. *Joel Hall* has agreed to indorse *Samuel Cooper's* notes, at the *Middletown Bank,* to the amount of 4000 dollars." The above expression, introduced by the emphatic word " *Whereas,*" gives to the agreement all the precision of a bond with condition. The object of it was, to impart a completeness to the contract, and to display the precise intention of the agreement. The mark at which the stipulation was directed—the whole of it, and not a part of it—was thus set up; and all the words of the contract were exclusively aimed at it.

In reference to the subject—that is, the agreement of *Hall* to indorse notes to the amount of 4000 dollars, and nothing else—next succeeds this stipulation : " I agree to be responsible to said *Hall* for one half the amount of any loss he may sustain, by said indorsements." I ask, by what indorsements ? The agreement, on its face, gives the answer : indorsements of notes to the amount of 4000 dollars. It is extremely difficult, by the use of plain language, admitting of a single meaning only, to render an agreement more definite than this, and more limited to one transaction, unless by the unnecessary use of a negative, in a case where it is clearly implied.

*Middlesex,*
July, 1831.

Hall
*v.*
Rand.

The construction, undoubtedly, is this : I agree to be responsible on your indorsement of notes to the amount of 4000 dollars ; and I agree to nothing more. This exposition is inevitable, unless it be admitted, that a contract may be carried beyond the plain meaning of its terms.

The subject matter expressed gives no unusual extent to the words of the agreement. It displays, on the part of *Hall,* an obligation to indorse notes only to the amount of 4000 dollars. Had the stipulation been to imdemnify against the indorsement of a *note* to the above amount, it could not, with any propriety, be contended, that more than one note could be indorsed on the credit of the agreement. The contract to indemnify against the indorsement of *notes* to a similar amount, requires the same construction. The only difference between the cases regards the *manner* in which the plaintiff may perform the act ; in one instance, by indorsing *a note,* and in the other, by indorsing *notes.* But the obligation assumed is the same. It is limited by the amount to be indorsed, which is a most essential part of the agreement. But the amount, in both cases, is the same ; and it cannot be transcended. But the indorsements of notes to the amount of 4000 dollars, and the indorsement of other notes to the amount of 4000 dollars, is an indorsement of these instruments to the amount of 8000 dollars.

The construction I have given is confirmed, by an obvious consideration, that if more had been intended, more would have been expressed. The expression would have been thus : Whereas *Joel Hall* has agreed to indorse, *from time to time,* the notes of *Samuel Cooper,* not to exceed, in existence *at any one time,* the amount of 4000 dollars. Why was not the contract thus expressed ? Plainly because it was not thus intended.

The obligation, which the plaintiff had assumed, is expressed in the most clear and unequivocal terms, of which the *English* language admits ; and so is the stipulation of the defendant in reference to it. There exists no doubt as to their meaning, so long as we adhere to the intendment of the plainest terms, established by the frequent use of them daily and constantly. If a person were to meet another, and to say, " I have agreed to indorse the notes of *S. Cooper,* payable at the *Middletown Bank,* to the amount of 4000 dollars ; " what would he understand ? That notes to this amount only were

to be indorsed. Would there be a question arising in the mind of the person addressed : Is he to indorse once, twice or repeatedly ? It is impossible. If these few plain words are ambiguous, then every expresion is of this description ; for one more definite and limited can not be made.

The meaning of the words being once established, every other part of the construction is of course. The writing contains a promise, that if there be loss, there shall be an indemnity to one half the amount.

That the notes were to be indorsed to the bank, can make no difference in the construction. Such notes are sometimes renewed *in toto ;* and sometimes they are renewable on part payment. But, in both instances, it is the result of a special agreement, either proved explicitly, or inferred from the usage of the bank. Besides, if the practice were, on good security, to renew notes at the bank, indefinitely, it would make no difference in the case. The defendant would be responsible to the extent of his contract only ; and in *Peters* v. *Goodrich*, 3 *Conn. Rep.* 146. it was held, by this Court, that an agreement to idemnify a person from his indorsement on a promissory note, discounted at the bank, did not extend to the indorsement of the renewal notes.

The cases cited in the argument fully confirm the exposition given.

The case of *Rapelye* & al. v. *Bailey*, 5 *Conn. Rep.* 149. was determined on the special subject matter of the contract; and the case of *Mason* v. *Pritchard*, 2 *Campb.* 336. and *Merle* & al. v. *Wells*, 2 *Campb.* 413. were on agreements in their terms so sweeping and unlimited as to bear no analogy to this case. All these cases are inapplicable to the one before us.

The case of *Kirby* v. *The Duke of Marlborough*, 2 *Mau. & Selw.* 18. is, in principle, very much like the one under discussion. It was determined, in that case, that a bond conditioned for the payment of such sums, not exceeding 3000 *l.,* which should, at any time thereafter, be advanced, by the plaintiffs, to *A.,* is not a continuing guaranty to the extent of 3000 *l.,* for advances made at any time, but only for advances once made, to that extent. The expression " *at any time,*" which was favourable to the agreement's being for a continuing guaranty, was held not to be sufficient for that purpose.

*Rogers* & al. v. *Warner*, 8 *Johns. Rep.* 119. fully warrants the construction I have given in this case. *A.* and *B.* ad-

*Middlesex,*
July, 1831.

Hall.
*v.*
Rand.

dressed a letter of credit to *C.*, saying, " If *D.* wishes to take goods of you on credit, we are willing to lend our names as security *for any amount he may wish.*" This comparatively strong expression was held to extend only to the *first* parcel of goods delivered. " It would be unjust and unreasonable," said the court, " to extend it to an indefinite time." How much more unreasonable and unjust would it be, to render the defendant liable on a guaranty, indefinitely to be continued, on expressions more defined and limited than those of the preceding case ?

In *Melville* & al. v. *Hayden,* 3 *Barn. & Ald.* 593. the defendant guaranteed the payment of a debt to be contracted, to the *extent* of 50 *l.* Exchange the word " extent," and insert in its place the term " amount," and we have the precise case before us. The above cited case was held not to be a continuing guaranty ; and in delivering their opinions, the judges advanced the following principle, *viz :* that a party in a guaranty of this sort should carefully provide, that there be words in it expressive of its being a guaranty for goods furnished *from time to time.* So in this case, if a continuing indorsement were intended, the above expression should have been inserted.

In *Cremer* v. *Higginson,* 1 *Mason* 323. it appears, that the defendants wrote a letter, in which they represented, that their friends *S.* and *H. Higginson* contemplated the making of a considerable purchase of goods on the continent of *Europe,* and requested the plaintiffs to furnish them with any sum they might want, as far as 50,000 dollars. This, by *Story, J.,* was adjudged to be a limited guaranty. And the principle, highly reasonable, was stated by him, that the language should be very strong to justify the holding it to be a continuing guaranty to cover advances from time to time to the stipulated amount ; and that, *in every doubtful case, the presumption ought to be against it.* Upon the same principle, ought not the language of the defendant's contract to be clear and powerful, to authorize the subjection of him from year to year, and indefinitely ? And if it be not free from all reasonable doubt, ought he to be responsible as upon so sweeping an engagement ? *Bovill v. Turner,* 2 *Chitty* 205.

On the established principles of construction, as well as upon the adjudged cases, I have no doubt, that the defendant assumed no responsibility, except as to the first notes to the amount of 4000 dollars, indorsed by the plaintiff. And it cer-

*Middlesex,*
July, 1831.

Hall
*v.*
Rand,

tainly is casting no unreasonable burden on those, who claim an unlimited guaranty, to require, that they shall exhibit a contract to this effect, expressed in clear and unequivocal terms. On the contrary, the safety of the community, and the preservation of that friendly assistance, so useful in the commercial world, both demand, that responsibilities be not adjudged by strained and rigourous constructions.

2. I now come to the second enquiry in the case, *viz :* whether the parol evidence received was admissible to give a construction to the agreement.

It is a settled general principle, that written evidence, by reason of its certainty and its freedom from the deficiencies of integrity and memory, is of higher authenticity than parol; and that matters in writing are not to be controuled, by the uncertain testimony of *slippery* recollection. 5 *Co.* 26. And when a written instrument is made, by the compact of the parties, the permanent repository of their intention, inferior oral evidence is neither admissible as a substitute, nor in any respect to vary or contradict the writing. And so far is this principle carried, that no extrinsic evidence, is, in general, receivable, to alter the construction of words, or to affect the presumptions arising from such construction. *Debeze* v. *Mann,* 2 *Bro. C. C.* 521.

Several distinct grounds, however, have been assumed for the introduction of the parol evidence in this case.

It was first said, that it was necessary to sustain the consideration of the agreement. The reply is obvious, that for this purpose it was not necessary. The agreement, on its face, imports, as it already has been observed, a good consideration. The act to be done, by the plaintiff, on the credit of the defendant's stipulation, was a consideration legal and sufficient. And independent of the defendant's promise, and the act done by the plaintiff thence arising, there is no consideration in the case.

It has likewise been insisted, that parol evidence was admissible, in order to a construction of the writing, on the ground of latent ambiguity. This is impossible ; as an ambiguity of this description is alone raised by extrinsic evidence ; and until such evidence is received, no latent ambiguity can exist. Besides, even the parol evidence admitted raises no ambiguity. The written agreement, on its face, is clear and unambiguous. It is to pay a moiety of loss that may happen, by reason

*Middlesex,* of the indorsement of notes to the amount of 4000 dollars only.
July, 1831. Admit that the plaintiff had agreed with *Cooper* to indorse his
notes once, twice and *in infinitum.* This casts not a shade of

Hall
*v.*
Rand.

doubt on a more limited written agreement, by the defendant, to guarantee the indorsement of the notes but once. It only shows, that the plaintiff, by the writing, did not obtain a complete indemnity. As to the proof of a verbal agreement by the defendant, that he would indorse the notes of *Cooper* indefinitely, and be responsible to the plaintiff for his indorsement of them, no ambiguity is created ; but the evidence is in direct opposition to, and in subversion of, the written contract ; and therefore, it is inadmissible.

It was further urged, by the plaintiff, that the parol testimony was receivable to show the subject matter of the agreement, and the circumstances anterior to it, in order to give it a construction.

To the principle advanced I reply, in the first place, that the subject matter of the contract appears wholly and completely on its face. The first expression of the written contract, is— " Whereas *Joel Hall* has agreed to indorse *Samuel Cooper's* notes, at the *Middletown Bank,* to the amount of 4000 dollars." Here, the entire subject matter is displayed. All antecedent oral agreements and considerations were merged in this ; and the above expression was put in front of the written contract, as a definite object, to ascertain the purpose and precise extent of the engagement. Of consequence, all the subsequent expressions point to it expressly. The defendant, looking at this landmark, agrees to be responsible for one half the loss arising " by said indorsements ;" thus explicitly referring to the above sentence, which the parties, how extensive soever the agreement of the plaintiff with *Cooper* might have been, make the precise subject limiting their contract.

I reply, secondly, that parol evidence, in order to give a construction to a written engagement, is never admissible, unless such contract, on its face, is ambiguous, and requires the aid of extrinsic evidence to expound it. This principle has the force of demonstration ; for why seek, by parol, to explain that, which needs no explanation ?

The case of *Sumner* v. *Williams,* 8 *Mass. Rep.* 162. was cited for the plaintiff ; but it has no bearing on this case. The subject matter was apparent, and the common principle only was recognized, that words are to be construed in reference to their subject matter.

In *The King* v. *Scammonden*, 3 *Term Rep.* 474. parol evidence was admitted, to show, that the consideration of a deed expressed to be 28*l.*, was in fact 30*l.* This was in contradiction of the deed; but it was in favour of one who was not a party to it, and who, therefore, was not estopped by the writing. 3 *Stark. Ev.* 1017. 1051, 2. *New Berlin* v. *Norwich*, 10 *Johns. Rep.* 229. The case has no application to the one under discussion.

In *The King* v. *Laindon*, 8 *Term Rep.* 379. an independent collateral fact was admitted to be proved by parol, to aid the construction of a written agreement; but it was because the contract, *on its face*, was *ambiguous*. Whether a person was hired as a servant, or was an apprentice, was doubtful, on the written instrument; and to dissolve this doubt, oral evidence was received.

In *Cole* v. *Wendell*, 8 *Johns. Rep.* 116. *Ely* & al. v. *Adams*, 19 *Johns. Rep.* 313. and *The Mechanics Bank* v. *The Bank of Colombia*, 5 *Wheat.* 326. where written evidence *on its face* was *ambiguous*, parol evidence of collateral facts was admitted, in order to give the writing a construction. Upon the same principle, it was admitted, by *Story*, J., in *Peisch* v. *Dickson*, 1 *Mason* 9. The words of a written contract, were supposed to admit of two interpretations, and of course, were equivocal. It was, however, stated, by the judge, as a principle, that if a written contract on its face is not ambiguous, parol testimony cannot be admitted to give it a construction; but if it is doubtful, the words being clear and sensible, parol evidence is admissible to solve the difficulty. The ambiguity arose from the word *privilege*, which like the word *freight*, is of various applications. *Birch* & al. v. *Depeyster*, 4 *Campb.* 385. *Clarke* v. *Russell*, 4 *Dall.* 415. 421. The case last cited is a strong authority to shew, that if a written agreement is not doubtful on its face, parol evidence is inadmissible; for, it being found, that the writing admitted of a construction, the parol evidence was, by the judge, disregarded.

In *Davenport* v. *Mason*, 15 *Mass. Rep.* 85. and *Foster* v. *Woods* & al. 16 *Mass. Rep.* 116. parol testimony was admitted to dissolve ambiguities arising from the face of written contracts.

In respect of ancient charters, extrinsic parol evidence has often been received with a view to their construction, that is, the evidence of usage; but this was done only where the

words of the charter were *doubtful.* To admit such testimony where there is no ambiguity, would not be to dispel a doubt, but to create one. 3 *Stark. Ev.* 1029 to 1032. In coincidence with the principle advanced, parol evidence has been received to show the purpose and intent of executing a written instrument, provided it be perfectly consistent with the legal operation of the instrument, and not inconsistent with its expressed terms. *Milbourn* v. *Ewart* & al. 5 *Term Rep.* 381. 3 *Stark. Ev.* 1048. To go beyond this, would be to vary the instrument,—to supersede it,—to alter its legal construction and operation; which cannot be done. Vid. 3 *Stark. Ev.* 997. 1012. 1003. For, after all, it is the written instrument that must speak. 3 *Stark. Ev.* 1001.

To avail himself of any parol evidence in the case, the plaintiff must show, that the written agreement is *ambiguous.* So far from this, the writing is of clear construction, and neither requires nor admits the aid of parol evidence.

It was contended, by the counsel for the plaintiff, that the parol evidence admitted, was *referred to,* by the agreement, and hence was competent testimony. This position is not sustained by the cited cases. That of *Johnson* v. *Gibson,* 4 *Esp. Rep.* 21. shows the principle of determination. It was said, by Lord *Kenyon* : " If the letter refers to the papers, which it covers,—that is, refers to them in such a way that it is necessary to incorporate the papers enclosed within the body of the letter, in order to make it intelligible or the sense complete,"—the enclosed papers are admissible in evidence. The reference is an *actual reference,* and the matter referred to essential to an understanding of the fact in enquiry. So in *Falconer* v. *Hanson,* 1 *Campb.* 171. a deposition expressly referred to a log-book for certain facts; and in *Wheeler* v. *Atkins,* 5 *Esp. Rep.* 246. an interrogatory referred to a letter ; and both the log-book and the letter were held admissible evidence. In all the cases above cited, the evidence admitted was expressly referred to, and the reception of it was necessary to render the subject intelligible.

But in this case, no fact extrinsic of the written agreement, is referred to ; and the written contract requires nothing to make it understood. It mentions an agreement made by the plaintiff with *S. Cooper,* and tells what it is ; but this is no reference to it. So every written contract embodies a pre-

vious parol agreement ; but the writing, in such case, is not ex-

plainable by parol.

If parol testimony were at all receivable, in this case, in order to assist in construing the written contract, I think it very clear, that much of the evidence admitted was incompetent. It appears to operate an entire suppression of the written agreement, and a substitution of verbal evidence in its place. The anterior facts and negotiations, instead of being merged in the written instrument, according to the well known rule of law, (1 *Johns. Chan. Rep.* 282.) are all brought forward, and virtually extinguish the written contract.

The plaintiff was permitted to prove, that *Cooper*, free from debt, and without capital, was desirous of entering into the *West-India* trade, as a *permanent* business ; that he had made an arrangement with the *Middletown Bank* to accommodate him, as the exigencies of his business should require ; that he applied to the plaintiff, the defendant, and others, to become his *standing indorsers*, to the amount of 2000 dollars each, who consented to it ; that the defendant, fearful of hurting his credit at the bank, preferred that his name should not appear on the notes ; that to obviate this difficulty, the plaintiff, on the defendant's request, agreed to be the indorser of *Cooper's* notes, *from time to time*, as he should have occasion in his business, to the amount of 4000 dollars ; that the defendant agreed to be equally responsible on the indorsements ; that knowing all the premises, he made and executed the writing in question ; and that *Cooper*, relying on this aid, commenced and continued his contemplated business.

Thus, numerous facts, shewing an extended series of agreements and negotiations, not contemplated by the defendant's written engagement, were admitted in evidence, including a contract with the *Middletown Bank*, with the plaintiff, the defendant and others ; a special agreement with the plaintiff to indorse, and of the defendant to indemnify ; and the whole consummated, by the written contract in question.

It is not difficult to see, that the written agreement, encompassed with this mass of testimony, must dwindle to a point ; and that the parol evidence received, would be the only voice heard by the jury. I cannot but think, that the admitted evidence was a substitute for the unavailable written contract ; and that its tendency was not to aid in construction, but to annihilate the writing. And if there were no writing, and the

*Middlesex,* object had been to show the responsibility of the defendant, by
July, 1831. parol evidence, what more could have been proved ?

Hall
*v.*
Rand.

I have no doubt, that the written agreement, on its face, was a limited guaranty ; and that the parol evidence was not admissible to give it a construction.

PETERS, WILLIAMS and BISSELL, Js. were of the same opinion.

DAGGETT, J.   The first question to be examined, is, by what rule of construction is the court to be governed in determining the true extent and meaning of the instrument on which the suit is founded ?

Here it may not be improper to remark, that the counsel for the defendant, in their argument, constantly recurred to the idea, that a strict construction was to be adopted, because it was a case on a guaranty ; and they likened it to an action by the vendor of goods, against a person, who had, in some way, as was claimed, rendered himself liable for another, to a certain extent.   They treated this action as though it had been brought by the *Middletown Bank,* against the defendant, on an instrument, by which he had become obligated for the indorsements of *Cooper ;* and they hence inferred, that unless he was bound, by a strict construction of the instrument, he was not bound at all.   But I apprehend no such rule is to be applied.   It is not a claim merely against a surety, and therefore *strictissimi juris ;* but it is a contract between co-sureties,—a contract of indemnity to a certain extent,—and the rule to be applied is, that it shall be taken most strongly against the person who made it.   If, however, this were a question of guaranty, of an ordinary character, I think it should be decided by the latter rule.   In *Merle &* al. v. *Wells,* 2 *Campb.* 413. and in *Mason* v. *Pritchard,* 12 *East,* 227. the courts held, that it should be considered a continuing guaranty, unless it unequivocally appeared to be of a contrary character.   And in the case of *Hargreave* v. *Smee,* 6 *Bing.* 244.   (19 *Serg. & Lowb.* 69.) *Park,* J. observed, that he was not disposed to hold the doctrine that a guaranty ought to receive a strict construction ; and *Tindal,* Ch. J. remarked, " that there was no reason for putting on a guaranty a construction different from that which the court puts on any other instrument."   In *Melville* v. *Hayden,* 3 *Barn. & Ald.* 593.   (5 *Serg. & Lowb.* 389.) the court adopt-

ed the strict construction. The rule adopted by this Court,

in *Rapelye* v. *Bailey,* 5 *Conn. Rep.* 149. was, " that the words of the contract [of guaranty] ought to be taken as strongly against the defendant [the guarantor] as the sense of of them will admit." This was the opinion of the whole Court, as declared by the Chief Justice ; and there being no peculiar reasons assigned, it is to be regarded as universally to be applied.

I will now apply the rule thus established in *Connecticut.* In reference to the words of the instrument, what obligation does the defendant assume in relation to the plaintiff? Does he become discharged, as soon as the plaintiff has indorsed for *Samuel Cooper* to the amount of 4000 dollars ? Or does he remain liable so long as the plaintiff continues to indorse for *Cooper,* at no one time going beyond that amount ? The words of the instrument appear to be susceptible of either of these constructions ; and which is to be given to them will depend upon the rule applied by the Court. If the words are to be taken strictly against the defendant, he is not liable ; but if, according to the rule established above, and which is as ancient as the common law itself, the words are to be taken strongly against the defendant, I can not avoid the result, that the defendant is liable. It would be too much to say, that if the whole amount of 4000 dollars had been taken up at once, on one note indorsed by the plaintiff, and then there had been successive renewals of that note, the defendant would have been discharged from all liability upon those notes. Yet such would undoubtedly be the case, if the strict construction insisted on is to prevail.

Though it is true, that each case of this nature is to stand on its own foundation, and be decided with reference to its peculiar circumstances; yet we may advantageously recur to other cases of a similar character, and examine how they were decided. Of those cases there are several not distinguishable in principle from the present.

The first is that of *Mason* v. *Pritchard,* 2 *Campb.* 436. S. C. 12 *East* 227. In that case, the defendant promised to be responsible to him for any goods he hath or may supply *W. Pritchard,* to the amount of 100*l.* It was contended, that the guarantor's responsibility was at an end, when the plaintiff had supplied goods to the amount specified ; but the judge at *Nisi Prius,* and the whole court of *King's Bench,* decided other-

HARVARD LAW LIBRARY

*Middlesex,*
July, 1831.

Hall
*v.*
Rand.

wise. They held, that the instrument was " a *continuing* and *standing* guaranty to the extent of 100*l.*, which might at any time become due for goods supplied, until the credit was recalled.

The case of *Hargreave* v. *Smee*, 6 *Bing.* 244. (19 *Serg. & Lowb.* 69.) is of a similar character. There the defendant guaranteed the payment of goods to be delivered to third persons " acordiang to their custom of trading with the plaintiff, in the sum of 200*l.* ;" and the court of " *Common Pleas* held that it was a continuing guaranty.

But the case of *Woolley* & al. v. *Jennings* & al. 5 *Barn. & Cres.* 165. (11 *Serg. & Lowb.* 187.) is, if possible, still more in point. In that case, the bankrupts, of whose estate the plaintiffs were assignees, had given the defendant a warrant of attorney, with a defeasance that it was " given to secure the payment of the sum of 4000*l.*, with lawful interest thereon." On this warrant of attorney a judgment was entered up; but between the date of the bond and the entry of the judgment, the bankrupts, in the course of their dealings with the defendants, had paid into their hands a larger sum than 4000*l.* And it was contended at *Nisi Prius*, that the warrant of attorney was discharged; but Chief Justice *Abbott* was of a different opinion, and the jury found a verdict for the defendants. On motion for a new trial, that opinion was confirmed, in the court of *King's Bench*; that court being of the opinion, that the warrant of attorney was a continuing security.

I will not refer again to the opinion of this Court, in *Rapelye* v. *Bailey*, 5 *Conn. Rep.* 149. except to say, that it fully supports the doctrine of *Mason* v. *Pritchard* above mentioned, and recognizes the principles advanced.

That these cases are precisely like the case before the Court, I do not insist; but that they materially differ from it cannot be shown. They are, therefore, guides to me to pronounce this a continuing guaranty.

Thus, by the decided cases, and the words of this instrument, giving their genuine construction, the defendant is liable.

But a question, in my view, of far greater importance, remains to be examined. Are we to be confined to the words in this guaranty, in deciding on its meaning; or may we look also to the circumstances under which it was given, to the situation of the parties, and to the object they had in view in the transaction? And here I fully recognize the correctness

Middlesex,
July, 1831.

Hall.
v.
Rand.

and obligation of the rule, that extrinsic evidence can never be resorted to, for the purpose of contradicting or controuling the express provisions of written instruments. This rule lies at the foundation of our most valuable rights, and cannot be shaken or departed from, without imminent danger.

I have said, that this instrument admits, on the face of it, of two constructions. According to one construction, it will be confined to indorsements made by the plaintiff, on *Cooper's* notes, to the amount of 4000 dollars ; and immediately thereafter, it will become *functus officio.* According to the other construction, it is a continuing guaranty, and remains obligatory on the defendant, for one half of the indorsements made by the plaintiff, not exceeding, at any one time, 4000 dollars ; no notice being given, by the defendant, to the plaintiff, to discontinue indorsing. Now, the precise question is, whether in determining which of these two is the correct construction of the instrument, we may look out of the instrument itself to the circumstances connected with its execution, and the situation and object of the parties. That this may, and ought to be done, I shall now attempt to establish.

In the case of *Peisch* v. *Dickson*, 1 *Mason*, 10. Judge *Story*, after observing that latent ambiguities may be removed, by evidence *aliunde*, but that such evidence is not admissible with reference to patent ambiguities, remarks : " There seems indeed to be an intermediate class of cases, partaking both of the nature of latent and patent ambiguities ; and that is, where the words are all sensible, and have a settled meaning, but at the same time, consistently, admit of two interpretations according to the subject matter in contemplation of the parties. In such cases, I should think parol evidence might be admitted to shew the circumstances under which the contract was made, and the subject matter in contemplation of the parties." With these remarks of that learned judge I entirely concur. They appear to present a somewhat confused subject in a very clear light. The distinction taken and the foundation on which it rests, must be obvious. This principle has been fully recognized, by Chief Justice *Hosmer*, in giving the opinion of the whole Court, in the case of *Strong* v. *Benedict*, 4 *Conn. Rep.* 210. 220. 231. His language is : " Without the expression of a definitive opinion on this subject, I have no doubt that the condition and situation of the parties, and other collateral facts known to them both, may be recurred to, to ascertain

their mutual intention. This is not a novel prinicple, but has been frequently recognized and applied. Courts of law, as well as courts of equity, will admit evidence of the situation and circumstances of the parties, for the purpose of assisting them in putting a construction on a will." Cases are then cited. In the case of *The King* v. *Laindon*, 8 *Term Rep.* 379. evidence was received to ascertain an independent fact, in order to aid in the construction of an agreement. After thus stating the rule, which is much broader than what is claimed in the present case, he proceeds to apply it, and says : " Under the guidance of the preceding principles, I will recur to the condition and circumstances of the parties, at the execution of the deed." He then fully states those extrinsic facts, and in reference to them, determines the true construction of the written instrument. The cases also of *Brown* v. *Brown*, 4 *Con. Rep.* 269. and *Lines* & al. v. *Flagg*, 4 *Conn. Rep.* 581. may be referred to, as evidence of the opinion of this Court on the subject. In deciding those cases, and determining the meaning of the written contracts on which they are founded, all the judges, who gave opinions, referred to the situation, conduct and object of the parties ; and no doubt was, in any way, intimated as to the propriety of this course.

In conclusion, I will also mention the case of *Ely* & al. v. *Adams*, 19 *Johns. Rep.* 313. The very able opinion of the court, by Chief Justice *Spencer*, fully supports all the grounds taken, and the views expressed, by me, on this subject.

It being shown, that we may and ought, in construing this guaranty, to look to the circumstances, situation and object of the parties, it remains only to enquire, what is the true meaning of the instrument viewed in this light ? Here I may confidently say, there is no room for doubt. The jury, by their verdict, have found the facts (to prove which the extrinsic evidence was admitted) as claimed by the plaintiff ; and in view of those facts, which are fully detailed in the motion, no person can doubt as to the intention of the parties or the correct construction of the guaranty. *Cooper* contemplated a permanent business, in which he would require " continual accommodations," and the assistance of " standing indorsers." The plaintiff became his standing indorser to the amount of 2000 dollars, on his own account and risk, and to the amount of 2000 dollars more, on the account and risk of the defendant. The plaintiff, at the request of the defendant, and for his ben-

efit, stood in his place as to this last mentioned sum, and relied, *Middlesex,*
for his complete indemnity, on the guaranty in question.　Un-　July, 1831.
der these circumstances, he has been compelled to pay a large
sum of money for the defendant ; and when he calls for in-　Hall
demnity, the defendant endeavours to shelter himself under　*v.*
various legal principles.　None of them, in my opinion, ought　Rand,
to afford him that protection.　The honesty and justice of the
case demand an adequate remedy to the plaintiff.　That the
subject should present itself to others in a different light, I can-
not but regret ; as their decision fixes a serious loss upon a
party, who expected, in the observance of that good faith
which usually characterizes the intercourse of merchants, a
different result.

Having come to the conclusion, that the guaranty in question
ought to be so construed as to include the notes, which the
plaintiff has paid, we are next to enquire, whether there has
been an omission of any act necessary to fix the defendant's
liability.　And here it is insisted, that the defendant was en-
titled to strict notice of the non-payment of the *Cooper* notes ;
in other words, that the same notice ought to have been given
to him, which is required to hold indorsers.　The rule that
indorsers of negotiable promissory notes are discharged, un-
less notified within the time prescribed by law, is unquestion-
able ; but it has never been extended to persons whose names
are not on the notes.　On the contrary, it has been expressly
and repeatedly decided, that such notice is not necessary to
strangers, however great may have been their interest in hav-
ing the notes paid. *Swinward* & al. v. *Bowes*, 5 *Mau. & Selw.*
62. *Van Wart* v. *Woolley* & al. 3 *Barn. & Cres.* 429.
(10 *Serg. & Lowb.* 145.)　The case of *Holbrow* & al. v. *Wel-
kins*, 1 *Barn. & Cres.* 10. is similar in principle, and almost in
its circumstances, to the one before the Court.　The plaintiffs
had sold goods to third persons, taking their acceptance of a
bill for the amount, half of which the defendant guaranteed.
The bill was not paid, when it became due ; and no notice of
the non-payment was given to the defendant.　The Court de-
cided in favour of the plaintiff, on the ground that the defen-
dant was not entitled to notice, as he was not a party to the bill.

But as this point and the other remaining questions rais-
ed by the counsel, formed no objections in the minds of any of
the Court to the plaintiff's recovery, I will forbear any further
remarks.　The points which they have discussed, are interest-

*Middlesex,*
July, 1831.

Hall
*v.*
Rand.

ing and important ; and I have freely expressed my views regarding them, though with the greatest respect for those from whom I am obliged to dissent. If my opinion be erroneous, I have the satisfaction of knowing that it can occasion no injury.

I am of opinion,

First, that this guaranty ought to be taken strongly against the defendant ; and that so taken, the defendant is liable :

Secondly, that the guaranty, on the face of it, admits of two constructions ; and that to determine which is the correct one, the court may, and ought, if necessary, to look out of the instrument to the circumstances under which it was given, and to the situation and object of the parties ; and that so doing, there can be no doubt the defendant is liable :

Thirdly, that the defendant was not a party to the notes paid ; and therefore, was not entitled to strict notice of the non-payment by the maker.

There being, then, no satisfactory objection to the verdict, I would not grant a new trial.

New trial to be granted.