## BISSELL and another *against* AMES.

*A*, *B* and *C* formed a partnership, in which *A* and *B* were each interested one fourth part, and *C* one half. At the same time, *D*, the father-in-law of *C*, gave a written guaranty to *A* and *B*, that *C* should fulfil all contracts the partnership should make in their business, to the extent of his interest in the partnership. The business was carried on, under the management of *C*, as the active partner, for some years, when *C* removed to *Canada*, and there died, insolvent and intestate, before any dissolution of the partnership, leaving no property in this state, except such interest as he might have in the partnership concerns. There being no settlement of the partnership accounts, either between the partners themselves, or between the partnership and other persons, *A* and *B* brought their action at law against *D*, on the guaranty, and during the pendency of that suit, sought the interposition of a court of chancery, by a bill against *D*, stating these facts, and averring, that in order to have complete justice done in said action, it was desirable, if not necessary, to have the accounts of the partnership fully settled; and praying for an adjustment of such accounts, and that such sum as should be found due from *C* to *A* and *B*, should be paid by *D*, or be made the rule of damages in said action. On a demurrer to this bill, it was held, that such bill was not sustainable; 1. because it did not appear from the facts stated, that the plaintiffs could not have adequate redress in said action; 2. because *D* was neither party nor privy to the partnership accounts; 3. because if the settlement sought were made, it would not be conclusive upon *D*, nor equitable that it should be; 4. because a court of equity will not extend the liabilities of a surety beyond their legal limits; 5. because no discovery was called for, no injunction sought, no mistake, accident, fraud or other ground of equitable relief, alleged.

THIS was a bill in chancery. The bill stated, that on the 16th of *July* 1833, *Asaph L. Bissell* and *Philip Valentine,* the plaintiffs, entered into partnership with *James Wells,* for the manufacture and sale of paper, at the *Eagle* mill in *Suffield,* which partnership was to commence on that day, and be continued until its dissolution; that *Wells* was to be interested one half, and the plaintiffs one quarter each, in the business, which proportion was to be the measure of their respective rights and liabilities; that as part of the partnership agreement, and because of the irresponsible character of *Wells,* and to induce the plaintiffs to enter into partnership with him, *David Ames,* the defendant, being the father-in-law of *Wells,* entered into the following written agreement with the plaintiffs, *viz.* "Whereas *James Wells* of *Springfield,* and *Asaph L. Bissell* and *Philip Valentine* of *Suffield,* have entered into partnership, in the manufacture of paper, at the *Eagle* mill in said *Suffield;* and whereas *David Ames* of *Springfield* is owner of one undivided half part of said mill and the real estate connected therewith; I hereby agree with said *Bissell* and *Valentine,* that said *Wells* shall well and fully fulfil all contracts which said partnership shall make in the prosecution of the manufacture of paper, so far as his one half of the interest in said mill and said partnership, is concerned. *Springfield, July* 17th, 1833. *David Ames.*" That in pursuance of said partnership agreement, said three partners from that time carried on the manufacture and sale of paper, at said mill in *Suffield,* actively and extensively, until *May* 1st, 1840; that during said period, said *Wells,* being the active partner, made purchases and sales, in the name of the company and for its benefit, of stock, paper and other things, and borrowed for the company large sums of money, and entered into diverse contracts binding upon the company, and received large amounts of the property of the company; that on the 1st of *April* 1842, there having been as yet no dissolution of the partnership, said *Wells* removed from the *United States* to *Canada,* where he continued to live; that, on the      day of      he died, insolvent and intestate, leaving no property in this state, except any interest he might have in said partnership business, nor, as the plaintiffs believe, any estate any where; that no administration has any where been taken

*Hartford,*
June, 1845.

Bissell
*v.*
Ames.

upon his estate, nor did he leave any estate at his death, with which to pay the expenses of probate ; that the accounts in business of said partnership have never been settled or closed up, either among the partners, or other persons ; and that of the debts, contracts and liabilities of said partnership, there are many out-standing and unsatisfied ; that said *Wells* died indebted to the plaintiffs, as partners, in large sums of money ; that said company, as such, is largely insolvent, and the plaintiffs have been compelled to pay, and have paid, as partners, sums of money far exceeding their proportions as partners, *viz.* the sum of 10,000 dollars ; and said *Wells* has not well and truly fulfilled all contracts which said partnership made in the prosecution of its business ; of all which said *Ames* has had notice, particularly at *Springfield,* on the 1st day of *December,* 1843, since the death of said *Wells,* when and where the plaintiffs demanded of said *Ames,* that he should pay said sums of money so due from said *Wells* ; that the plaintiffs have brought their action at law against said *Ames* upon said contract, which is now pending in the superior court in the county of *Hartford,* demanding of him the payment of such sums of money as are due as aforesaid from said *Wells* and from said *Ames* to the plaintiffs, by reason of said contract ; and that in order to have complete justice done in said suit, it is desirable, if not necessary, to have the accounts of said partnership fully settled ; that said *Ames* is made a party to this suit, that he may attend to and aid in the settlement of said partnership account, and be bound thereby.

The plaintiffs prayed, that if it should be found necessary, the sum to be found due from said *Ames,* by reason of his said undertaking, should become the rule of damages in said action at law. They further prayed the court to appoint a committee to take and settle the accounts and business of said partnership, and to order and decree, that such sum as should be found due from said *Wells* to the plaintiffs, or such part thereof as equity requires, should be paid by said *Ames* to the plaintiffs, or that it should be made the rule of damages in said action at law.

To this bill there was a general demurrer ; and the case was thereupon reserved for the consideration and advice of this court.

*Hungerford* and *Cone*, in support of the demurrer, contended, 1. That this bill will not lie for an account in chancery against *Ames*. To sustain the action of account at the common law, it was indispensable that there should be a privity, either of contract or in law ; and it lies only as against bailiff, receiver, guardian in socage, and between merchants. It will not be claimed that the present bill comes under either of these heads. The cases in which a court of chancery will interpose and compel an account, may be classed thus : First, accounts arising out of privity of contract, which are mutual, or where, in case they are all on one side, a discovery is sought, and is material to the relief. 1 *Sto. Eq. sec.* 459. Secondly, such as have their foundation in actual or constructive trusts, or torts affecting property. 1 *Sto. Eq. sec.* 462. Thirdly, such as have their foundation in contracts, or *quasi* contracts. 1 *Sto. Eq. sec.* 467. Fourthly, where the relief sought is proper relief for a court of equity to grant, and the taking of the account is incidental to the relief. 1 *Sto. Eq. sec.* 453. The present case does not fall within either of these classes.

2. That the bill not only does not state that the plaintiffs have not adequate remedy at law, but it shows that they have. This is a mere case of guaranty, or an engagement on the part of *Ames* to pay the debt of a third person ; and a mere contract of guaranty does not fall within the jurisdiction of a court of chancery. If it did, it would, on the same principle, bring with it a very extensive class of cases. The bill indeed alleges, that an action at law is pending, and that it is *desirable* that the account should be settled ; and *Ames* is made a party, to the end that he may be bound by the settlement ; but no discovery is sought ; nor is any reason shown why the plaintiffs may not have complete redress in the pending action.

3. That on the whole bill, taken together, it appears, that *Ames* is rather called upon to assist in the settlement of the account, than to render any account himself. Has a court of chancery ever interposed for such a purpose ?

4. That the object of the bill is, that the superior court should constitute a distinct tribunal for the trial of this cause, in which the plaintiffs may avail themselves of their own tes-

*Hartford,*
June, 1845.

Bissell
*v.*
Ames.

timony; whereas the power of establishing courts, and changing the rules of law, appertains to the legislative, and not to the judicial prerogative. By the established rules of law, *Ames* is entitled to a trial by jury; and this right cannot be impaired, without a violation of our constitution.

*Ellsworth,* (with whom was *Parsons,*) contra, contended, 1. That a court of equity has jurisdiction of the settlement of a partnership, where there are more than two partners, severally concerned. *Cornwell* v. *Lee,* 14 *Conn. R.* 527. *Gaines* v. *Chew,* 2 *How. U. S. R.* 642,3. 1 *Sto. Eq. sec.* 28. 33. 548. 671. & n. 2 *Sto. Eq. sec.* 1434. 1526.

2. That the peculiar circumstances in the case, regarding *Wells,* the active partner in the business, *viz.* his removal out of the country and his death abroad, intestate and without assets, add to the reasons for seeking the aid of a court of chancery. Ought these plaintiffs to take out administration, with a view of administering upon the estate of a foreigner, who has no estate here? This, if done, would not affect *Ames;* because, in the first place, the deceased was not an inhabitant of this state, nor had any property here. There is nothing here to give the court of probate jurisdiction. Nor would any act, admission, or settlement, by such an administrator, here, have any effect on *Ames* in *Massachusetts,* or be evidence against him, there being no privity. Secondly, if either of the plaintiffs was administrator, he could not act in his own case. Thirdly, such a course would not give *Ames* any advantage he has not now.

3. That to compel the plaintiffs to go on with their action at law, without the aid sought by this bill, would in effect be a denial of justice, without benefiting *Ames.* The partnership account ought first to be settled, which can only be done here in equity; and *Ames* is the only man interested. He can now see that it is settled correctly.

CHURCH, J. It must be conceded, that the experiment of this case is a new one. We think it is a proposition to extend the powers of a court of equity beyond its ordinary jurisdiction, and certainly beyond the authority of any precedent which we have seen.

HARVARD LAW LIBRARY

This bill sets up no fraud, mistake, accident, or trust. It asks for no injunction, specific performance, nor discovery; nor for any thing which falls within the well defined powers of chancery. It avers no facts, which show, that the action at law, now pending, for the breach of the contract recited in the bill between these parties, will not furnish to the plaintiffs an adequate remedy. Indeed, the only avowed pretence for a resort to a court of equity, is, that there is a copartnership account in the case, which it is desirable, if not necessary, should be settled ; and this defendant is made a party, that he may attend to and aid in such settlement. But was a court of equity ever called upon before, or did it ever assume, as appertaining to its jurisdiction, to settle an account, except as between the parties to it, or their privies or legal representatives ? *Ames* is not required to render any account ; nor is it alleged in the plaintiffs' bill, that he has it in his power to do so ; nor that the accounts cannot as well be settled, in the action at law, as here. *Ames* was not a copartner ; nor was he privy to one, either in blood, in law, or in estate, nor by contract. He was no party to the articles of copartnership, and cannot be presumed to have been conversant with the business or accounts. He was a stranger. How then can he be brought alone into a court of equity as a party defendant, and, without the representatives of the deceased copartner, be made to settle such an account ? An account thus adjusted, notwithstanding the formality of making *Ames* a party here, would be in effect altogether an ex parte affair. To bring him into court to aid in settling an account of which he knows nothing, may be a very harmless matter ; but a very ungracious feature of this bill is, that it prays, that the result of such a settlement may be conclusive upon *Ames,* and afford an imperative rule of damages against him, in the action at law ! If *Wells,* the insolvent partner, was alive, and this proceeding was against him, the decree could have no such effect against his surety, *Ames.*

How far, in such case, a decree against *Wells,* if alive, or against his representatives, would affect this defendant, if at all, we are not required to say. But all the cases seem to recognize the principle, that when a collateral guaranty does not, from its nature or its terms, secure against the consequences of an action between the creditor and the principal,

Hartford,
June, 1845.

Bissell
*v.*
Ames.

nor necessarily contemplate the recovery of a judgment, such judgment or decree, if of any effect to fix the liability of the guarantor, is never regarded as conclusive upon him. He has had no such right, either of defence or appeal, as is permitted to a surety, by the civil law. *Douglass* v. *Howland,* 24 *Wend.* 35. *Rapelye* v. *Prince,* 4 *Hill,* 120. *Moss* v. *McCullough,* 5 *Hill,* 131. *Jackson* v. *Griswold,* 4 *Hill,* 522. *Beal* v. *Beck,* 3 *Har. & McHen.* 242. *Drummond* v. *Prestman,* 12 *Wheat.* 515. And it seems to us, that by our decree in this case, to give an effect to the adjustment of a copartnership account against a mere surety, and to which account he has not been, in any way, privy, so as to conclude him, would be eminently unjust and unprecedented.

But suppose, under this bill, we could declare, that a decree fixing the balance against *Wells,* should operate against *Ames,* only as *prima facie* evidence of the amount of his responsibility ; such a decree, in its actual consequences, would be equivalent to a conclusive one ; because, as *Ames* is only a stranger, and has had no knowledge of the accounts, he cannot rebut even such *prima facie* case. This would be equally inequitable.

If these plaintiffs had instituted proceedings against this defendant, to compel a discovery, or the production of papers &c. in aid of their action at law, there might have been no objection to them. And then, if a discovery was obtained, the court, in conformity with the general course of equity jurisdiction, would have proceeded to a final decree, granting the proper relief. But no such ground of equitable interference is claimed. And we repeat it, that this defendant is a surety of the most naked kind. He has all the rights and privileges of a surety of this description. His responsibilities are strictly of a legal, and not of an equitable, character ; and as a guarantor, his liability may be dependent upon conditions and contingencies, which he cannot be compelled to forego for the convenience of the plaintiffs. And indeed, we suppose, that a court of equity will never extend the liabilities of a surety beyond their legal limits ; and his rights are to stand on the defensive until a case is proved against him at law : they are *stricti juris. Walsh* v. *Bailie,* 10 *Johns. R.* 180. *Dobbin* v. *Bradley,* 17 *Wend.* 422. *Birkhead* v. *Brown,* 5

*Hartford,*
*June, 1845.*

Bissell
*v.*
Ames.

*Hill* 634.    *Miller* v. *Stewart,* 9 *Wheat.* 680.    *Whitcher* v. *Hall,* 5 *B. & Cres.* 269. (11 *E. C. L.* 224.)    *Ludlow* v. *Simond,* 2 *Caines Cas. Err.* 1.    *Braxton* v. *Winslow,* 1 *Wash. R.* 31.

The plaintiffs suppose, that there is some peculiarity in this case, which gives it a claim upon a court of equity, by reason of the fact, that *Wells* has died insolvent, and that no administration has been granted upon his estate ; and that there is no person interested in taking the account but *Ames,* who can be made party to the bill for this purpose. We do not see how the legal rights of this surety can be changed, by the death of *Wells.* If the plaintiffs are embarrassed by it, in regard to their facilities of proof, this may be their misfortune, but it is not the defendant's fault.

But we do not discover any legal embarrassment in the way of the plaintiffs, produced by the death of *Wells* ; because, they can pursue their action at law against the defendant, and recover any sum they shall be able to fix upon him, as the surety of *Wells.* They make no allegation in their bill, that their remedy at law is not adequate. They do say, that it is desirable that the copartnership accounts should be settled ; but that this is necessary to give them adequate relief, they do not pretend. We know, that, in prosecuting the action at law upon the contract of guaranty, the plaintiffs cannot testify, and thus may not have as full proof as they hope to have here, where they probably believe they can, by settling the copartnership account, charge the defendant, by their own testimony. But what then ? That a party may fall short in his proof at law, affords no ground for equitable relief, where no discovery is called for, and no mistake nor accident has intervened. A court of equity cannot, in this case, more than in any other, help the plaintiffs to their own oaths, because they may not be able to prove their case in any other way. 1 *Sto. Eq.* 439. 440.

If *Wells* be dead, insolvent, yet his interest in this copartnership is assets, which will give to the court of probate jurisdiction of his estate.—These plaintiffs, being creditors, are entitled to administer upon it, and through the agency of commissioners, have these accounts adjusted. Whether such a proceeding would have an effect more or less conclusive upon the rights of this defendant, or more or less so than a

decree of a court of equity against *Wells*, or his administrator, we are not prepared to say.

We think no one can fail to see, that this is an attempt to convert a guarantor into his principal, and a call upon the court to aid the plaintiffs to charge him as such, by their own testimony, because they fear their common law evidence may prove inadequate, in their action at law.

We believe, that this bill is insufficient, and cannot be sustained.

In this opinion the other Judges concurred, except STORRS, J., who was not present when the case was argued, and gave no opinion.

Bill dismissed.