RAMON MARTINEZ HERNANDEZ, Respondent, *against* SILAS M. STILWELL, Appellant.

(Decided January 7th, 1878.)

In an action upon a contract indorsed upon a money bond and expressed in these words : " I expressly guarantee the *ultimate* payment of the sum named herein, together with interest *and all lawful charges*, or so much thereof as shall be due and owing.".—*Held*, that the contract intended a liability only upon default of the principal debtor, and that a complaint on the contract not setting forth a demand on the principal debtor, his default, and notice to the defendant, was bad on demurrer.

An obligation, where the word "guaranty" is used, may be construed as an original and absolute one, but not unless it is plain that such was the intention of the parties.

APPEAL by the defendant from an order made at special term, by Judge VAN HOESEN, overruling a demurrer to the complaint.

The action was brought by Hernandez, upon a contract of Stilwell, indorsed upon the bond of one Remington.

The complaint set forth the contract, which was in the following words:

" For and in consideration of one dollar, to me in hand paid by Ramon Martinez Hernandez, the receipt of which is hereby acknowledged, and other good and valuable considerations me thereto moving, I hereby expressly guarantee unto the said Ramon Martinez Hernandez the ultimate payment of the sum of money named herein, together with interest and all lawful charges, or so much thereof as shall be due and owing, for which I do hereby bind myself, my heirs, executors and administrators.

" Sealed with my seal, and dated the 18th day of December, 1868."

The complaint alleged the making and delivery of the bond of even date; that it was conditioned for the payment of money only; and that only a part of that sum had been paid; and that there was due and owing on the bond a specified sum. It appeared that the time within which the amount of the bond was by its terms payable had passed at the beginning of the action.

The defendant demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action.

*H. C. Gardiner*, for appellant.

*Edmund Wetmore*, for respondent.

CHARLES P. DALY, Chief Justice.—The defendant's obligation was a conditional undertaking. He guaranteed the *ultimate* payment of the sum of money named in the bond given by Remington to the plaintiff, together with interest *and all lawful charges*, or so much thereof as might be due

and owing. He did not engage as principal. His obligation imposed upon him no duty but the ultimate payment, if Remington failed to pay, of what might be due on the bond, with interest and all lawful charges. It was a guaranty. He says, "*I expressly guarantee*," which is to engage for the payment of a debt or the performance of a duty by another. (*Durham* v. *Manrow*, 2 N. Y. 549; De Collyer on Guaranties, p. 38.) A promise that if Remington did not pay the bond, that he would, guaranteeing "*the ultimate* payment," implies a default, or something which is to precede, before he who guarantees is ultimately bound, or the word ultimate in the connection in which it is used has no meaning; and we are bound to give their ordinary meaning and full effect to the words used by the guarantor. (*Bissell* v. *Ames*, 17 Conn. 127; *White* v. *Reed*, 15 id. 457; *Crist* v. *Burlingame*, 2 Barb. 351; *Leggett* v. *Humphreys*, U. S. N. S. 66; *Shore* v. *Wilson*, 5 Scott N. R. 1037; Story on Promissory Notes, § 472, pp. 599 to 603; § 474, p. 614; 2 Parsons on Contracts, 505; Broom's Legal Maxims, 456, 6th Amer. ed.) Where the words are ambiguous, they are to be construed most strongly against the guarantor (*Mayer* v. *Isaac*, 6 Mees. & W. 605), for it is his fault if they are so. But there is no ambiguity in the words "the ultimate payment," the word ultimate having a definite meaning, which is that another is to be resorted to, and if he makes default or cannot pay, the debt is secured by the ultimate liability of the defendant. This appears to me to be the plain meaning of the language, and implies some endeavor or diligence on the part of the creditor to secure the debt from the principal debtor,—at least, a demand of the debt from him,—his failure to pay and notice to the guarantor, that he may at once take such measures as may be within his power to secure or indemnify himself. (2 Parsons on Contracts, pp. 25, 27 and 28, 6th ed.; *Foote* v. *Brown*, 2 McLean, 369; *Oxford Bank* v. *Haynes*, 8 Pick. 423; Story on Promissory Notes, § 460, 472.) I do not say that it requires that the creditor shall exhaust the ordinary legal remedies against the principal debtor to enforce the payment of the debt, as in the cases of a guaranty

of the collection of a debt (*Craig* v. *Parkis*, 40 N. Y. 181);— but the instrument contemplates the probability of such a procedure on the part of the creditor; as it provides not only for the ultimate payment of the sum named in the bond, with interest, or so much of it as shall be due and owing, but also the payment of *all lawful charges*. All that is recoverable upon the bond is what may be due upon it, with interest; and this additional undertaking for the payment of all lawful charges would appear to. contemplate such lawful charges as the creditor may be put to by his effort, in good faith, to compel the payment of the bond by the principal debtor. The fact of such an additional undertaking goes very far to show that the engagement was meant to be one of guaranty;—an engagement that if Remington failed to, or did not pay, the defendant would pay. That this was what was intended, further appears by what is put in the disjunctive, or " so much " of the sum of money named in the bond " as shall be due and owing," implying that there might be a payment of part of the sum by the principal debtor, and that the defendant's engagement is for the ultimate payment of the residue, with interest and all lawful charges.

The word guaranty may be used when the engagement is an original and absolute one to pay the debt, when it becomes due. But that construction is put upon it only when it is plain that that was the intent of the parties (*Brown* v. *Curtiss*, 2 N. Y. 225; *Durham* v. *Manrow*, id. 534) ; as where the engagement was in fact to pay the guarantor's own debt by means of the note of a third person, the payment of which he guaranteed, and which it was held, in the cases last cited, was not, within the statute of frauds, a special promise to answer for the debt, default, or miscarriage of another; the rule in determining whether the instrument is an original undertaking or a guaranty being, that the language used is to be so interpreted as to ascertain and give effect to the real intention of the parties. (*Crist* v. *Burlingame*, 62 Barb. 351; *White* v. *Reed*, 15 Conn. 457.) Where a party, therefore, gives to his creditor, for the pay-

ment of his own debt, a promissory note of another and writes upon the back of the note : " I guarantee the payment of the within," it is not a conditional, but an absolute undertaking that he will pay the note to the creditor when it becomes due, being himself indebted to the creditor in the full amount of the note. That is what is necessarily meant in such a case by the word guaranty ; for being primarily liable to the creditor for the full amount of the note, the intent cannot have been that he was to pay the amount only in the event of the failure or inability of the maker to pay it. But there is nothing of this kind averred in the complaint to give to the word guaranty a meaning other than, and different from, what the word ordinarily implies. If the bond were payable in instalments, then the word ultimate might be understood as meaning an ultimate and absolute engagement to pay the whole or whatever might remain due upon it. But it was not. It was entered into on the 18th of December, 1868, and was for the payment of the full sum of $20,000, with interest, on the 18th of December, 1869 ; the interest being payable semi-annually, so that there is nothing upon the face of the bond itself to give to the word ultimate a special signification in connection with the instrument, or to qualify the ordinary meaning of the word guarantee.

"The law," said Chief Justice Marshall, in *Russell* v. *Clark* (7 Cranch, 90), " will subject a man having no interest in the transaction to pay the debt of another, only when his undertaking manifests a clear intention to bind himself for that debt. Words of doubtful import ought not, it is conceived, to receive that construction. It is the duty of the individual who contracts with one man, on the contract of another, not to trust to ambiguous phrases and strained constructions, but to *require* an explicit and plain declaration of the obligation he " (meaning the one entering into the obligation) " is about to assume." And Justice Story, in *Lawrence* v. *McCalmot*, in reference to such obligations, remarks that words are not to be forced out of their natural meaning, but should receive a fair and reasonable interpretation.

The real inquiry, says Hosmer, Ch. J., in *Hall* v. *Rand*

(8 Conn. 560), is, what was the intention of the defendant; and to ascertain this, his words must be taken in their popular and obvious sense; that is, the true meaning of the contract which readily presents itself to a man of plain understanding on reading it attentively and impartially; and not that which is elaborated with effort.

In *Tuton* v. *Thayer* (47 How. Pr. 180), the defendant guaranteed the *payment* and *collection* of a note with costs, if any made. It was held that both words were to be taken together; that it was not a guarantee solely of the collection of the note; and that therefore it was not necessary to entitle the plaintiff to exhaust his legal remedy against the debtor; but that if he did so, the defendant, as he had guaranteed the collection, would, as in a guaranty for collection, be answerable, not only for the debt, but also for the costs incurred in the attempt to collect from the principal debtor; but it being a guaranty both of payment and collection, the holder had his election to proceed in the first instance either against the maker or against the guarantor; and if he did proceed against the former, and failed to collect, he had his remedy against the guarantor for the expenses incurred, as well as for the debt. All that can be regarded as held in that case is, that in such a guaranty it is not necessary to exhaust the legal remedy against the principal debtor before resorting to the guaranty. It does not hold that this was an absolute and unconditional undertaking to pay the debt; but recognizes that the relation existed there of a principal debtor and a guarantor; and for all that appears in the case, the defendant may have been notified of the failure of the maker to pay the note upon which his guaranty to pay it would become absolute.

In *Seaver* v. *Bradley* (6 Me. [6 Greenl.] 60, 64), the instrument sued upon was in these words: "I will be ultimately accountable to you for the sum of $150, if the said Heald shall purchase goods of you, and should fail to pay you for them."

Heald purchased a bill of goods on a credit of six months, and failing to pay for them, after the expiration of

that time, the creditor notified the guarantor of the amount sold to Heald on the faith of the guaranty, and his failure to pay. It was argued in that case that the guarantee was absolute; but the court held that it was not; that the undertaking was conditional. Mellen, C. J., said that the word "ultimately" meant, in that case, that the guarantor would pay if the defendant did not comply with the terms of his engagement; and the defendant having had due notice of the advances that had been made on the faith of the guaranty, and that the debtor had failed to pay for the goods, as he had agreed, at the expiration of six months; that the guaranty, which was before conditional, became absolute when the guarantor was notified of what was advanced on the guarantee; and that Heald had failed to keep his engagement; and this notice having been given before the action was brought, that the plaintiff could recover on the guaranty. The question in the case was, whether the guarantor had been duly notified, there having been some delay in consequence of legal proceedings against the debtor. The court held the notice to be sufficient, as no injury had arisen to the guarantor by the delay; and the action was sustained.

In the present case, gathering the intent from the language used, I understand the obligation to mean that the defendant is to be liable if Remington fails or is unable to pay the bond when it falls due, as the original and principal debtor; and that, to recover against the defendant, it was necessary to aver that payment of the bond had been demanded of Remington, or that he was insolvent, or unable to pay, or something of the kind; and that the defendant was duly notified thereof, whereupon his obligation to pay became absolute.

I think, therefore, that the demurrer to the complaint should have been sustained, and that the order overruling it was erroneous. No injury can arise from such a construction, as the guarantee expresses that it was upon a sufficient consideration.

JOSEPH F. DALY, J., concurred.

Order reversed. Demurrer overruled with leave to answer.